UNITED STATES

v.

Salvador DIAZ, Chief Fire Controlman
(E–7), U.S. Navy.

NMCCA 200200374.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence adjudged 1 Dec. 2000.

Decided 23 March 2005.

Lt Colin Kisor, Jagc, USNR, Appellate Defense Counsel.

Lt Frank Gatto, Jagc, USNR, Appellate Government Counsel.

Maj Kevin C. Harris, USMC, Appellate Government Counsel.

Before CHARLES WM. DORMAN, C.L. SCOVEL, and M.J. SUSZAN.

DORMAN, Chief Judge:

The appellant was tried before a general court-martial composed of officer and enlisted members. Contrary to his pleas, the appellant was convicted of three specifications of raping his 12–year–old daughter, and two specifications of indecent acts upon her. The appellant's crimes violated Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934. The adjudged and approved sentence consists of a dishonorable discharge, confinement for 9 years, forfeiture of all pay and allowances, and reduction to pay grade E–1.

On 10 June 2004, we issued a decision in this case. In that decision, we determined that the evidence of record was both legally and factually sufficient to support the appellant's conviction of all offenses of which he had been found guilty. We, however, were unable to resolve an issue raised by the appellant concerning conflict of counsel. We thus returned the record of trial to the Judge Advocate General of the Navy, authorizing a hearing under *United States v. DuBay,* 37 C.M.R. 411, 1967 WL 4276 (C.M.A.1967), to answer specific questions concerning the conflict of counsel issue. That hearing was conducted on 29 and 30 July 2004, and the case has now been returned to this court for completion of appellate review pursuant to Article 66(c), UCMJ.

We have reviewed the record of trial and the appellant's eighteen assignments of error

(AOE) raised by the appellate defense counsel, which are as follows:

I. APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFLICT–FREE COUNSEL WAS VIOLATED WHEN THE MILITARY JUDGE ALLOWED, WITHOUT OBTAINING A VALID WAIVER BY APPELLANT, THE DETAILED DEFENSE COUNSEL TO REPRESENT APPELLANT DESPITE HIS INFORMING THE COURT OF A CONFLICT OF INTEREST AFFECTING THE REPRESENTATION.

II. APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS DEFENSE COUNSEL INTRODUCED NO EVIDENCE AS TO APPELLANT'S GOOD MILITARY CHARACTER.

III. THE MILITARY JUDGE ERRED IN ALLOWING THE GOVERNMENT TO SELECT WHICH ONE OF THE RELEVANT AND NECESSARY DEFENSE WITNESSES WOULD NOT BE PRODUCED BASED ON THE COST OF PRODUCTION.

IV. THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING THE DEFENSE CHALLENGE OF LT MCGEE FOR CAUSE.

V. THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING THE DEFENSE CHALLENGE OF SENIOR CHIEF LASHER FOR CAUSE.

VI. THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING THE DEFENSE CHALLENGE OF SENIOR CHIEF DEAN FOR CAUSE.

VII. THE MILITARY JUDGE ABUSED HIS DISCRETION IN PERMITTING THE GOVERNMENT TO PRESENT IRRELEVANT AND CONFUSING EXPERT TESTIMONY IN ORDER TO RECOVER FROM THE DAMAGING AND FACTUALLY ERRONEOUS TESTIMONY OF ITS OWN WITNESS.

VIII. THE MILITARY JUDGE ABUSED HIS DISCRETION IN NOT ALLOWING THE DEFENSE COUNSEL TO IMPEACH EMILY DIAZ WITH HER PRIOR INCONSISTENT STATEMENT.

IX. THE MILITARY JUDGE ERRED IN DECLINING TO INSTRUCT THE MEMBERS THAT APPELLANT'S CHARACTER FOR TRUTHFULNESS COULD BE CONSIDERED BY THE MEMBERS IN DETERMINING HIS INNOCENCE TO THE RAPE CHARGE.

X. APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO SPEEDY APPELLATE REVIEW WERE VIOLATED IN THIS CASE.

XI. THE GOVERNMENT FAILED TO PROVE THE CRIME OF RAPE BEYOND A REASONABLE DOUBT.

XII. THE WITHDRAWAL OF THE CHARGES FROM A SPECIAL COURT–MARTIAL AND REFERRAL OF THE CHARGES TO A GENERAL COURT–MARTIAL WITHOUT AN EXPLANATION VIOLATED R.C.M. 604.

XIII. THE CONVENING AUTHORITY IMPROPERLY REFERRED THE CHARGES TO A GENERAL COURT–MARTIAL.

XIV. THE ARTICLE 32 INVESTIGATION CONDUCTED IN THIS CASE WAS FATALLY DEFICIENT AND THE CHARGES WERE REFERRED TO A GENERAL COURT–MARTIAL NOTWITHSTANDING APPELLANT'S TIMELY DEMAND FOR A PROPER ARTICLE 32 INVESTIGATION.

XV. APPELLANT WAS DENIED DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION IN THAT HE WAS TRIED BY A PANEL OF FEWER THAN TWELVE MEMBERS.

XVI. ARTICLE 52, UCMJ, IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT'S CASE IN THAT IT ONLY REQUIRED CONCURRENCE OF TWO–THIRDS OF THE MEMBERS TO CONVICT APPELLANT.

XVII. APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL THROUGHOUT THE COURT–MARTIAL PROCESS.

## XVIII. THE MILITARY JUDGE ABUSED HIS DISCRETION IN PREVENTING THE PROPER CROSS-EXAMINATION OF NCIS AGENT DEGNAN.

Appellant's Brief of 16 Oct 2003 at ii and iii. We have also considered the Government's response, the Reply Brief filed by the appellate defense counsel, as well as the Appellant's Supplemental Reply Brief submitted *pro se* pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). Additionally, we have reviewed the pleadings submitted by both the appellant and Government after completion of the *DuBay* hearing, as well as the record of that hearing. Following our thorough review of all these materials, we conclude that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ.

### Statement of Facts

At the time of trial the appellant was a 47-year-old chief petty officer with over 20 years in the Navy. The victim in this case is his natural daughter, who was born in October 1985. She provided the principal evidence against the appellant. She testified that the appellant began to sexually abuse her in March 1998, when the family was living in Pemberton, NJ, and continued until just before she reported the abuse in July 1999. At that time the family had moved to government quarters aboard Naval Weapons Station (NWS), Earle, NJ. The appellant had been married to the victim's mother, but they divorced after the mother abandoned the family.

The abuse began in the family's two-story home in Pemberton. Prior to the abuse, the victim had been sharing a room with one of her older sisters. When another sister moved out of the house, the victim moved into a downstairs bedroom located across from the appellant's bedroom. The victim would frequently sleep in the same bed with the appellant. The first incident occurred on one such evening. The victim testified that she believed the appellant thought she was sleeping when he put his arm around her and felt her body through her clothes. He then put his hand inside her clothes and rubbed her vagina for about 10 minutes. They did not discuss what had happened. She also testified that after this incident the appellant repeated the same sort of conduct about every other night. She began to spend more nights in her own room. Although the appellant kept his clothes on during these touchings, the victim could tell that he was aroused because she could feel his erect penis against her leg. This activity continued until the victim told her aunt, the appellant's sister, that the appellant had been touching her inappropriately. The aunt let the victim go home with the appellant on the same evening that the victim had reported the abuse to her. At that time, the appellant told the victim that if she wanted him to stop touching her, all she needed to do was to tell him. The victim responded, telling the appellant to stop, and the touching ceased until after the family moved to NWS Earle.

The appellant, the victim, and one other sibling moved to NWS Earle in March 1999, and the appellant began to touch the victim again, this time rubbing her breasts. At one point the appellant told the victim that he was doing this to keep her away from boys. He explained that if he took care of her at home she would not go looking for boys at school or on the streets. She also testified that the touching escalated to sexual intercourse at Earle. She testified that the appellant had sexual intercourse with her three times in the quarters at Earle, twice in the appellant's bedroom and once in the living room. The victim was scared, confused, and embarrassed. They did not talk about what happened. All sexual activity between the two of them stopped after the victim walked to the medical clinic on base and reported the appellant's actions.

The appellant testified on his own behalf. During his testimony he admitted that he had fondled the victim's breasts and had digitally penetrated her vagina. He also acknowledged that the touching could have occurred as often as twice a week. He further testified that he did not do this to satisfy his sexual desires, but rather because he believed that the victim was becoming sexually

promiscuous. The appellant denied having had sexual intercourse with his daughter. On questioning by the court members, the appellant testified, "I felt, if my daughter learned the right approach to sex with me, it was much more efficient than learning it from some kid on the street, that I knew, ... just wanted to have another benchmark on his bedpost or something." Record at 747. He also testified that he did not explain to his daughter why he was touching her, but that he told her, " '[w]hat I'm doing is wrong. It's against the law, but I want you to understand that this is being done, so you don't get involved with other children of your age.' " *Id.* at 751.

### Sufficiency of the Evidence

In the appellant's eleventh AOE, he asserts that the evidence is insufficient to prove that he raped his daughter. We have once again carefully considered this issue, as well as the sufficiency of evidence with respect to the allegations that the appellant committed indecent acts upon his daughter. The test for legal sufficiency is well-known. It requires this court to review the evidence in the light most favorable to the Government. In doing so, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987)(citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Without question, with regard to the three specifications of rape and the two specifications of indecent assault, that standard is met.

The test for factual sufficiency is more favorable to the appellant. It requires this court to be convinced of the appellant's guilt beyond a reasonable doubt, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses. *Turner*, 25 M.J. at 325. Reasonable doubt, however, does not mean the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R.1986)(citing *United States v. Steward*, 18 M.J. 506, 508 (A.F.C.M.R.1984)). "[T]he factfinders may believe one part of a witness' testimony and disbelieve another."

*United States v. Harris*, 8 M.J. 52, 59 (C.M.A.1979). So too may we.

In resolving the question of factual sufficiency, we have carefully reviewed the record of trial, but have given no deference to the factual determinations made at the trial level. Based on that review, we are convinced beyond a reasonable doubt of the appellant's guilt of the charged offenses. We find the testimony of the victim to be credible and consistent. While true that the victim gave differing versions of the appellant's culpability prior to reporting his criminal conduct to authorities, she had a reasonable explanation for her earlier "stories." Furthermore, her testimony concerning the indecent acts is generally corroborated by the appellant's own testimony. Although the appellant asserts that when he touched the victim's breasts and penetrated her vagina with his fingers he had no intent to gratify his sexual desires, and although he presented character evidence that he is a truthful person, we find the appellant's testimony disingenuous and unworthy of belief. Furthermore, we credit the testimony of the victim in this case, and we find that the evidence of record is both legally and factually sufficient to support appellant's conviction on all charges and specifications.

### Conflict of Interest/Effective Assistance of Counsel

In the appellant's first AOE and in his briefs filed after the *DuBay* hearing, the appellant argues that he was denied his Sixth Amendment right to be represented by attorneys who did not labor under a conflict of interest. In the appellant's second and seventeenth AOE's, he alleges that he was denied effective assistance of counsel. Additionally, the appellant himself raises issues of the adequacy of his representation in his *pro se* filing of 19 December 2003. In that filing the appellant specifically alleges that his attorneys were inadequately prepared to defend him.

At the first Article 39(a), UCMJ, session of the appellant's court-martial, the trial defense counsel informed the military judge of a potential conflict of interest in the case. During pretrial discovery the Government provided to the appellant information sug-

gesting that the appellant assaulted a female petty officer, Petty Officer F. The trial defense counsel informed the military judge that he had represented Petty Officer F on unrelated charges at her own court-martial, and that he was concerned the Government might attempt to offer evidence of the alleged assault if the appellant were to introduce evidence of good military character. The trial defense counsel also informed the military judge that if the Government was unwilling to agree not to use that evidence his client would "in all likelihood" dismiss the detailed defense counsel as well as the assistant defense counsel, who also was involved with Petty Officer F's court-martial. No ruling was made concerning the issue during that session of the trial.

At a subsequent Article 39(a), UCMJ, session, the Government raised a motion *in limine* seeking to have the military judge find that the detailed defense counsel did not have a conflict of interest. In answering the Government's motion, the appellant submitted an affidavit stating that:

> I am extremely concerned that my counsel feel unable to adequately represent me regarding any issues that involve the alleged assault of [Petty Officer F]. I know that I face severe punishment including life in prison if convicted. I do not want to be represented by lawyers who do not believe they can do their best job because of a conflict of interest.

Appellate Exhibit XIV. In litigating this motion, the Government made clear that if the appellant called witnesses to testify that he had good military character, it would ask the witnesses if they were aware that the appellant had assaulted Petty Officer F. The military judge found that the Government had a good faith basis for asking this question, that it could not offer extrinsic evidence to prove that the assault took place, and that Petty Officer F was not going to testify. The Government also indicated that it intended to ask good military character witnesses if they were aware the appellant had injured one of his other daughters and told her to lie about how she had been injured when she went to the hospital seeking medical treatment for the injury.

While the military judge did not state whether he believed there to be an actual a possible conflict of interest, he did state that he would permit the Government to ask defense character witnesses if they were aware that the appellant had assaulted Petty Officer F. Record at 43. With that ruling, the trial defense counsel informed the military judge that he would advise the appellant "of his right to dismiss us and request individual military counsel...." *Id.* at 45. The military judge also advised the appellant of his right to request individual military counsel (IMC) to avoid any perceived conflict, and told the appellant that he needed to advise the military judge the next day if he wanted IMC. *Id.* at 45–47. The military judge also stated that he found the conflict "to be kind of [an] extraneous issue," *id.* at 45, and that it was "fairly minimal," *id.* at 48. This Article 39(a), UCMJ, session ended on 30 October 2000. When the court-martial reconvened on 27 November 2000, the appellant did not raise the conflict of interest issue. It did, however, come up again.

Just prior to the members being instructed on findings, the appellant addressed the military judge concerning the fact that no evidence of his good military character had been presented. A fairly lengthy discussion ensued. *Id.* at 785–800. During this dialogue the military judge explained to the appellant that his counsel had tactical reasons for the way they handled the issue of good military character. The appellant specifically stated that he did not agree with their decision, noting his concern throughout the court-martial that evidence of his good military character was not introduced into evidence. The dialogue concluded with the military judge telling the appellant that he would not be allowed to represent himself, or to question witnesses on his own. The military judge then asked the defense if they wanted to either reopen their case to present the evidence or reopen to allow the appellant to retake the stand. The defense declined both offers. *Id.* at 801.

In our decision of 10 June 2004 we expressed our concern about the failure of the two trial defense counsel to introduce evidence of the appellant's good military charac-

ter. We also found that the record failed to provide sufficient information for us to determine whether his attorneys had labored under a conflict of interest that adversely impacted their ability to provide the appellant with effective representation. To address these issues we authorized a *DuBay* hearing, specifically asking the military judge conducting the hearing to address the following issues:

> (1) whether there was an **actual** conflict of interest in the appellant's court-martial; (2) if there was an actual conflict of interest, whether it adversely affected counsel's representation of the appellant—focusing on the question of why no evidence of the appellant's good military character was presented during the findings stage of the appellant's trial; and (3) if there was an actual conflict of interest, whether the appellant intended to waive the conflict.

*United States v. Diaz*, No. 200200374, unpublished op., 2004 WL 1281559 (N.M.Ct.Crim. App. 10 June 2004) at 7 (emphasis in original).

Following a two-day fact-finding *DuBay* hearing, the military judge found that the appellant's trial defense counsel had a "legitimate tactical reason ... not to call good military character witnesses on the merits." Essential Findings of Fact and Ruling dated 24 Sep 2004 at 5. The military judge also found that "[t]here was **no actual conflict of interest** in appellant's court-martial." *Id.* (emphasis in original).

In the case before us, we were initially concerned by the absence of evidence of good military character on the merits. This concern was heightened by the comments of the two trial defense counsel and the appellant contained in the record of trial, and the failure of the military judge to adequately resolve the issue. Those issues and concerns have now been resolved. We have carefully reviewed the thorough *DuBay* hearing conducted in this case. During that hearing, both of the appellant's trial defense counsel were called as witnesses and asked to explain their trial strategy and tactics and their view of the conflict of interest issue. In essence, both counsel testified that the potential conflict of interest involving Petty Officer F

resolved itself when the military judge ruled that the Government would not be allowed to present extrinsic evidence concerning the appellant's alleged assault upon Petty Officer F. They also testified that their decision not to present evidence of good military character was to prevent the Government from asking those witnesses if they had heard about the appellant's alleged assault upon one of his other daughters. In his post-*DuBay* pleadings, the appellant challenges the findings of fact of the military judge, alleging that the military judge abused his discretion in believing the testimonies of the two trial defense counsel.

The law is quite clear as to the standard of review we must apply concerning this issue. "A military judge's fact-finding is reviewed under a clearly erroneous standard, and his conclusions of law are reviewed de novo." *United States v. Khamsouk*, 57 M.J. 282, 286 (C.A.A.F.2002)(citing *United States v. Monroe*, 52 M.J. 326, 330 (C.A.A.F.2000)); *see also United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F.2001)(concerning issue of effective assistance of counsel); *United States v. Spriggs*, 52 M.J. 235, 244 (C.A.A.F.2000)(concerning whether an attorney-client relationship had been severed); *United States v. Argo*, 46 M.J. 454, 457 (C.A.A.F.1997)(concerning issues of prosecutorial misconduct); *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F.1997)(concerning determination regarding the effectiveness of counsel). Our superior court has also said that the findings of fact of a military judge are to be given "substantial deference and will be reversed only for clear error." *United States v. Edmond*, 41 M.J. 419, 420 (C.A.A.F.1995)(quoting *United States v. Taylor*, 487 U.S. 326, 337, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)). In reviewing questions of fact, we are to "review the evidence 'in the light most favorable to the Government'...." *United States v. Richter*, 51 M.J. 213, 221 (C.A.A.F.1999)(quoting *United States v. Kitts*, 43 M.J. 23, 27–28 (C.A.A.F.1995)). Finally, we note that just as the military judge is evaluating evidence when considering the question of guilt or innocence, when resolving any factual issue the military judge must be able to "believe one part of a witness' testi-

mony and disbelieve another." *Harris,* 8 M.J. at 59.

■ The substantive law is also clear. A military accused has a constitutional right to the effective assistance of counsel. Included within that right is the right to an attorney who is not encumbered by a conflict of interest with other clients. *United States v. Henry,* 50 M.J. 647, 651 (N.M.Ct.Crim.App.1999)(citing *United States v. Carter,* 40 M.J. 102, 105 (C.M.A.1994)). But even in cases where a single attorney is representing individuals charged with the same crime, that fact alone does not necessarily give rise to a conflict of interest. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In cases of "multiple representation," while it is not necessary to demonstrate prejudice in order to obtain relief, an appellant must demonstrate that he objected at trial and that the "conflict of interest actually affected the adequacy of his representation...." *Id.* at 348–50, 100 S.Ct. 1708. Prejudice is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)(quoting *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In *Mickens v. Taylor,* 535 U.S. 162, 175, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court once again noted that a defendant is not entitled to relief until he " 'shows that his counsel *actively represented* conflicting interests' ...." (quoting *Sullivan,* 446 U.S. at 350, 100 S.Ct. 1708)(emphasis in original). The Court also cautioned against an "unblinking" application of the *Sullivan* presumption of prejudice standard in all conflict of interest cases. *Id.* at 174, 122 S.Ct. 1237.

■ Our superior court has stated that in resolving conflict of interest issues there are four questions that must be examined. "Was there [successive] representation? If so, did it give rise to an actual conflict of interest? If so, did appellant knowingly and intelligently waive his right to conflict-free counsel? If not, did the conflict have no adverse effect on counsel's representation of appellant?"

*United States v. Smith,* 44 M.J. 459, 460 (C.A.A.F.1996)(citing *United States v. Smith,* 36 M.J. 455, 457 (C.M.A.1993)). In answering these questions, we give deference to the findings of fact reached by the military judge following the *DuBay* hearing. We give deference to those findings because, following our examination of the verbatim record of the *DuBay* hearing, we conclude that the findings of fact are not clearly erroneous and are supported by the record. While the appellant asserts that there are some inconsistencies in the testimonies of the two trial defense counsel at the *DuBay* hearing when compared to statements they made during the appellant's court-martial, given the lapse of time between the two hearings, some inconsistencies would be expected. A military judge is routinely called upon to resolve inconsistencies in testimony when making findings of fact and/or decisions of guilt or innocence. *See Harris,* 8 M.J. at 59. While the appellant may disagree with the findings of fact, the inconsistencies in testimony with those findings do not render the findings of fact an abuse of discretion. We adopt the findings of fact issued by the military judge on 24 September 2004 as our own. We also hold that none of the alleged inconsistencies in the statements of counsel are material to resolution of this case.

■ We then look to the findings of fact to answer the four questions posed in *Smith.* First, there was successive representation in this case. LT Attanasio, the appellant's lead defense counsel, represented Petty Officer F at an earlier court-martial. While the appellant's court-martial was pending, Petty Officer F made allegations that the appellant had assaulted her. LT Attanasio was concerned that the appellant might be charged with that assault, and he readily recognized the potential for a conflict of interest. Thus, in the sense that LT Attanasio had represented Petty Officer F and was then faced with the possibility of representing the appellant in a case where Petty Officer F may be called as a witness against the appellant there was successive representation. Second, this successive representation did not give rise to an actual conflict of interest because the appellant was never charged with the assault upon

Petty Officer F, and because LT Attanasio was never placed in a position where he had to represent the interests of one client over the other. Third, it is clear from the record that the appellant did not waive any conflict of interest that his defense team may have had to deal with concerning Petty Officer F. But, since there was no actual conflict, waiver is of no consequence. Finally, the potential conflict had no adverse effect on the representation provided to the appellant by his defense team. As they explained during the *DuBay* hearing, even if they were not faced with the Petty Officer F assault, they would not have presented evidence of good military character for tactical reasons, because they did not want the Government to be able to ask those character witnesses if they were aware that the appellant had assaulted one of his other daughters.

Following our review of the facts and our application of the controlling case law, we conclude that there was no actual conflict of interest in this case. We also conclude that the potential for a conflict of interest did not adversely affect the representation the appellant received from LT Attanasio or from LT Eberting, the assistant defense counsel. In light of these conclusions, it is not necessary to discuss or resolve issues concerning what advice the appellant was provided by his defense counsel concerning this issue, or what steps the counsel took to avoid the conflict. We note, however, that the military judge provided extensive advice to the appellant on the record concerning his right to conflict-free counsel. Were we to grant relief to the appellant on the basis of the illusory conflict of interest in this case, we would engage in the "unblinking" application of the *Sullivan* presumption of prejudice standard in all conflict of interest cases. *Mickens,* 535 U.S. at 174, 122 S.Ct. 1237. We will not apply the standard in this manner.

The appellant also asserts that he was denied effective assistance of counsel. He specifically alleges that the failure of his counsel to present evidence of good military character on the merits deprived him of effective representation. He further alleges that his counsel were not adequately familiar with the facts of the case, did not adequately investigate and interview potential witnesses, and did not adequately cross-examine the victim. Appellant's Brief at 12–15, 48–50, and Appellant's *Pro Se* Supplemental Reply Brief of 19 Dec 2003 at 11–14.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the standard for reviewing claims of ineffective assistance of trial defense counsel on appeal. The Court declared that:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052. These standards are equally applicable before this court. *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987). Moreover, in *Strickland,* the Supreme Court reasoned that:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

466 U.S. at 689, 104 S.Ct. 2052. We review allegations of ineffective assistance of counsel *de novo. United States v. McClain,* 50 M.J. 483, 487 (C.A.A.F.1999)(citing *Wean,* 45 M.J. at 463).

In order to show ineffective assistance of trial defense counsel, an appellant

"must surmount a very high hurdle." *United States v. Smith*, 48 M.J. 136, 137 (C.A.A.F.1998)(quoting *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F.1997)). When viewing tactical decisions by trial defense counsel, the test is whether such tactics were unreasonable under prevailing professional norms. *United States v. Quick*, 59 M.J. 383, 386 (C.A.A.F.2004). It is strongly presumed that trial defense counsel is competent in the performance of representational duties. *Scott*, 24 M.J. at 188. To rebut the presumption of competence of trial defense counsel, the appellant is required to point to specific errors committed by his trial defense counsel, which, under prevailing professional norms, were unreasonable. *Id.* (citing *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Further, the appellant must establish a factual foundation for a claim that his trial defense counsel's representation was ineffective. *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F.2000). An appellant's "[s]weeping, generalized accusations will not suffice." *Id.* (citing *Moulton*, 47 M.J. at 229).

"Acts or omissions that fall within a broad range of reasonable approaches do not constitute a deficiency." *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F.2001). We "strongly presume that [trial defense] counsel has provided 'adequate assistance.'" *United States v. Russell*, 48 M.J. 139, 140 (C.A.A.F.1998)(quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). The appellant cannot overcome this presumption unless he can show that, absent the ineffective assistance of his trial defense counsel, there would have been a reasonable doubt respecting guilt. *United States v. Polk*, 32 M.J. 150, 153 (C.M.A.1991) (citing *Scott*, 24 M.J. at 189).

Our superior court has held that trial defense "[c]ounsel have a duty to perform a reasonable investigation or make a determination that an avenue of investigation is unnecessary." *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F.2002)(citing *United States v. Brownfield*, 52 M.J. 40, 42 (C.A.A.F.1999)). Further, "[w]e do not look at the success of a ... trial theory, but rather whether [trial defense] counsel made an objectively reasonable choice in strategy from the alternatives available at the time." *Dewrell*, 55 M.J. at 136 (quoting *United States v. Hughes*, 48 M.J. 700, 718 (A.F.Ct.Crim.App.1998)).

This court need not reach the question of deficient representation if we can first determine a lack of prejudice. *United States v. Quick*, 59 M.J. 383, 386 (C.A.A.F.2004)(citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052); *United States v. Adams*, 59 M.J. 367, 371 (C.A.A.F.2004)(citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052). In order to constitute prejudicial error, the appellant's trial defense counsel's deficient performance must render the result of the proceeding "unreliable" or "fundamentally unfair." *See United States v. Ingham*, 42 M.J. 218, 223 (C.A.A.F.1995)(quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

We need not speculate as to why the trial defense team did not offer evidence of the appellant's good military character. As a result of the *DuBay* hearing, they have told us. Faced with the admissions the appellant had made to the criminal investigators, the trial defense team made a tactical decision to try to convince the members that the appellant was a truthful person—that he was believable. They did not believe it to be in the best interest of their client to allow the Government to inject information into the record concerning the appellant's prior assault—though not sexual in nature—upon one of his other daughters. Had they offered evidence of good military character, the Government could have challenged the opinions of those witnesses by asking them if they knew the appellant had injured one of his other daughters by assaulting her. *See United States v. Pruitt*, 46 M.J. 148 (C.A.A.F.1997). We will not second-guess those tactical decisions. *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A.1993)(citing *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A.1977)).

Concerning the appellant's allegations that his counsel failed to adequately investigate his case, we have absolutely no evidence before us to suggest that either of the appellant's trial defense counsel failed to properly investigate the case. In light of the presumption of competence, as well as our evalu-

ation of the trial performance of his counsel, we find that the appellant has failed to overcome the high burden to challenge the effectiveness of his representation on those grounds. Regarding the fact that his attorneys did not present evidence that the appellant did not rape or abuse his oldest daughter, we are unconvinced of the relevance of that "evidence." We note, however, that the appellant himself implicitly raised this issue when he testified that he started touching the victim because he did not want her to become promiscuous like his oldest daughter. Record at 734.

We have considered the appellant's arguments concerning the adequacy of his representation. We find that the appellant has failed to meet his burden in demonstrating that he was denied effective representation. But, even if there were shortcomings in the representation, we would not grant relief because we conclude that even if his counsel had done all the things the appellant wanted them to do, the results of the trial would have been the same. The appellant's explanation of why he was regularly touching his daughter's breasts and vagina is so incredible that we are convinced beyond a reasonable doubt that no amount of good military character evidence, no additional investigation, no testimonials from other family members that the appellant did not sexually abuse or rape them, would have changed the outcome of this case. Without question, the appellant was afforded a fair court-martial, the results of which are reliable.

In conclusion, we do not find deficient representation by trial defense counsel under the *Strickland* standards. To the contrary, the trial defense team effectively represented the appellant at trial on all charges. To the extent that the trial defense team did not meet the *appellant's* standards, we find no prejudice.

### Challenge for Cause

Subsequent to voir dire, the appellant challenged three members of the panel for cause, LT McGee, Senior Chief Lasher, and Senior Chief Dean. The military judge denied all three challenges. The appellant then exercised a peremptory challenge in a manner that preserved the issue for appellate review.

See *United States v. Jobson*, 31 M.J. 117, 120 (C.M.A.1990); RULE FOR COURTS-MARTIAL 912(f)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed). In AOE's IV, V, and VI, the appellant argues that the military judge erred in denying his challenges for cause against these three members. We find no merit in these arguments.

For purposes of clarity, we include the relevant portion of the record of trial.

MJ: Defense Counsel, any challenges for cause?

DC: Yes, sir. We have three challenges for cause. First, sir, we challenge Lieutenant McGee, due to her background as a SAVI, Family Advocacy. She's had extensive dealings in the area of sexual complaints. It is impossible to predict what preconception she brings in. Merely 'cause a member mimics the correct answer, sir, does not relieve the challenge. We have an appearance problem here, too, with someone who has such a long history of—her duties, actually, involve these various types of allegations.

MJ: Okay. Do you want me to rule on—Trial Counsel, what's your response?

TC: Sir, Lieutenant McGee made clear, with her answers, that she doesn't consider an allegation to be any more than an allegation. As she said, "There's always a truth behind it." I think—I think that cuts both ways of the defense's statement. But, I don't think anything from her answers would give credence to that statement. Basically, she's made quite clear, over and over again, that nothing with her experience as a SAVI, is going to influence her either way here. She's seen cases that are unsubstantiated, and we don't even know, maybe she hasn't seen any cases that were substantiated. I think she's pretty clear that she has an open mind in this position here.

MJ: Okay. I understand the government's position. What is—what is your next challenge for cause?

DC: So, the court's going to rule at the end, sir?

MJ: Yes.

DC: The next challenge for cause is Senior Chief Lasher. He previously served as a Chief Master–at–Arms, in a law enforcement capacity. Additionally, his answers were hesitant during the—during the voir dire, particularly with respect to punishment considerations, with respect to the elements. We believe that, both, actual and implied bias exists here, Your Honor. And, given the liberal grant mandate, Your Honor, the court should certainly dismiss him.

MJ: I understand. Trial Counsel?

TC: Sir, I don't think we can look into hesitation before an answer as an implied bias. I mean, there's some pretty technical legal questions that were being asked of the Senior Chief, and understandably, he would be nervous. He sat there and he thought his answer out, and then he gave his answer. That doesn't mean he didn't necessarily agree with what he was saying, or giving a canned answer, a "canned answer." I just thought he took a minute, gathered his thoughts and he gave his answer. I don't think any inference can be drawn from the fact that there is a hesitation. As far as him being a former master-at-arms, he made it quite clear that there was nothing there that was going to affect his ability to judge the evidence in this case fairly and impartially. To be quite honest, there wasn't anything of substance, in his experience, other than the fact that he did serve as a prior master-at-arms. So, I don't think that's any grounds for cause to—to strike the member from the jury.

MJ: Very well. I understand that. Your third, Lieutenant Attanasio?

DC: Yes. Senior Chief Dean. Sir, he was—additionally, we would—he was hesitant in his manner, in his answers to questions. Again, particularly, on the elements questions, which are central to the defense. And, because of that we, again, we believe an actual and implied bias does exist.

And, again, Your Honor, with respect to all three challenges we—we request the court to consider them within the strong case laws' liberal grant mandate. Thank you, sir.

MJ: Okay. Members—I realize I wrote down—I realize I wrote down on—for the wrong—but Senior Chief—Senior Chief Dean, sat at this end, was the individual who—said his wife was—okay—again, could you go over Senior Chief Dean again? Again, I apologize. I just—because I wrote it down in the wrong space, but I——

DC: Yes, sir.

MJ: I entered Senior Chief Paul in Deans'——

DC: Yes, sir. The court's correct. Senior Chief Dean was, in fact, the individual whose ex-wife's sister was raped and murdered.

MJ: Tell me, again, what is the basis for——

DC: Well, Your Honor, certainly, that is, obviously a traumatic crime. Rape occurred in his family history. We believe, in addition to that, that he was hesitant in manner, and his answers to, particularly, the elements questions, were troubling, due to his hesitation. And, of course, Your Honor, again, as the court mentions, he has a specific family history of a rape and murder.

MJ: Okay. Trial Counsel?

TC: Sir, with respect to the individual he knew, who was raped and murdered, it wasn't a family member at the time. He really didn't know her; it was right when him and his wife started dating. This was several years ago. He made absolutely no indication that this—that incident's going to affect him in anyway in judging the evidence in this case. And, to be quite honest, the only thing defense counsel mentioned, the first time, was that he was hesitant in his answers.

Getting to that point, again, the fact that he was hesitant in his answers doesn't mean anything. It was quite confusing. Actually, the military judge had to step in and explain some of the questions that were being asked to the Senior Chief. The fact that he hesitated a second, again, can mean he was gathering his thoughts, in answering the question. There's nothing at all, given from his answers, that could,

even if you're reading between the lines, that would suggest that he's going to be anything but fair and impartial in this case.

MJ: Okay. I understand. Any other challenges by the defense?

DC: No other challenges for cause, Your Honor.

MJ: Okay. Your challenges for all three are denied. Individually, Lieutenant McGee, I understand she—she did say she had worked for SAVI and Family Advocacy, but I found her answers to be honest, and she seemed very forthright in her answers, as far as not considering that when determining the facts of this case. I believe she can be a—a fair—I don't believe she has any actual or implied bias.

Regarding Senior Chief Lasher and Senior Chief Dean, I did find that, from viewing both, I did not notice any—if there was any—any hesitancy in answering any of the questions, I did not take that as—I did not see in them that any—where that was meant that they were reluctant to follow the law or reluctant to answer questions. Simply, I took it as them considering—thinking about the question that was given and answering the question as honestly as they can. I found their demeanor to be appropriate.

Regarding Senior Chief Lasher and his billet as-so—frankly, I found their test—as far as the way they answered questions, did not give me any pause at all.

The other two issues, then, were regarding Senior Chief Lasher and his—his duties as a Chief Master-at-Arms. Because of the fact that—that's denied. He said he—indicated that he would view the evidence as—as presented to him, and he would not give any law enforcement agent any additional credibility. I also considered the fact that he never, personally, investigated any sexual assault type charges.

And, regarding Senior Chief Dean, I found that—I've found no actual bias. I was, frankly a little concerned about the two rapes. But, I find they were—they happened so long ago, and not to a current family member. His ex-wife indicated—his one ex-wife indicated she was raped when she was younger. Did not seem to—Senior Chief Dean did not seem to be—have any difficulty with that, in his statements. And, his answers to questions seemed forthright. And, the fact that his ex-wife's sister was raped and murdered in 1980, he did not know her very well, if at all. He's no longer married to her. He wasn't married to his ex-wife at the time, and did not—he did not know the girl very well at all. So, I considered that, also. And, for those reasons, the challenges for cause are denied.

Record at 364–70.

We turn then to whether the military judge correctly denied the defense's challenges for cause against LT McGee, Senior Chief Lasher, and Senior Chief Dean. Our review of the voir dire of these members suggests that the only possible basis for causal challenge here is R.C.M. 912(f)(1)(N), which provides that "[a] member shall be excused for cause whenever it appears that the member ... [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). Our superior court has outlined the law applicable to such situations and the appropriate application of this rule.

R.C.M. 912(f)(1)(N) encompasses "both actual bias and implied bias." R.C.M. 912(f)(3) provides: "The burden of establishing that grounds for a challenge exist is upon the party making the challenge." Military judges should be "liberal in granting challenges for cause."

"The test for actual bias [in each case] is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" "Actual bias is reviewed" subjectively, "through the eyes of the military judge or the court members."

Actual bias is a question of fact. Accordingly, the military judge is given great deference on issues of actual bias, recognizing that he or she "has observed the demeanor of the" challenged party. "We will not overturn the military judge's" denial of a challenge unless there is "a clear abuse of discretion in applying the liberal-grant mandate."

On the other hand, implied bias is "viewed through the eyes of the public." "The focus 'is on the perception or appearance of fairness of the military justice system.'" There is implied bias "when 'most people in the same position would be prejudiced.'" We give the military judge less deference on questions of implied bias. On the other hand, we recognize that, when there is no actual bias, "implied bias should be invoked rarely."

*United States v. Warden*, 51 M.J. 78, 81–82 (C.A.A.F.1999) (citations omitted)(alteration in original); *see also United States v. Wiesen*, 56 M.J. 172 (C.A.A.F.2001).

We must first determine whether the challenge is based upon actual or implied bias. Actual bias is a credibility issue and great deference is given to the determination of the military judge. *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F.1996). "The test for actual bias is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F.1997)(quoting *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A.1987)). Implied bias, however, is viewed objectively, through the eyes of the public. *Id.* The focus is on the appearance of fairness. *Id.* Given the responses of LT McGee, Senior Chief Lasher, and Senior Chief Dean during voir dire, we see no issue of actual bias in this case. We will therefore apply the more demanding objective standard concerning implied bias. We recognize that "[t]he burden of establishing that grounds for a challenge exist is upon the party making the challenge." R.C.M. 912(f)(3).

In applying the more demanding standard—affording the military judge less deference than we would in a case of actual bias—we have reviewed the findings of the military judge and adopt them as our own. We conclude that the military judge did not err in denying the appellant's causal challenges against LT McGee, Senior Chief Lasher, or Senior Chief Dean. We reach this conclusion primarily upon our own review of the voir dire of these three members, and arrive at the same findings as the trial judge. Record at pages 369–70. Accordingly, we

reject the appellant's fourth through sixth AOE's.

**Instructions—Character for Truthfulness**

In the appellant's ninth AOE, he alleges that the military judge erred when he refused to give a defense-requested instruction that the appellant's character for truthfulness could, in and of itself, give rise to reasonable doubt. Having evaluated this argument in the context of the evidence presented, as well as the appellant's alleged crimes, we conclude that the military judge did not err in refusing to give the requested instruction.

During the appellant's case-in-chief the defense presented the testimony of at least five witnesses who testified that the appellant was a truthful person. The appellant also presented evidence that the victim was not truthful. Based upon the evidence of his truthfulness, the appellant requested that standard instruction 7–8–1 from the Military Judge's Bench Book, Dept. of the Army Pamphlet 27–9 (Ch. 1, 30 Jan 1998), be given to the members. Specifically, the appellant focused on that portion of the instruction that said, "to show the probability of his innocence, the defense has produced evidence of the accused's character for truthfulness. Evidence of the accused's character for truthfulness may be sufficient to cause a reasonable doubt as to his guilt." Record at 778. The military judge refused to give that instruction. He explained his decision.

MJ: Okay. I understand. Here's why I'm not giving that instruction. I believe that instruction goes towards—as a—when the character is an issue as a defense. For instance, good military character as a defense to—that the accused committed the crime; honesty as a defense that the accused may have stolen something; peacefulness, ... as to whether the accused assaulted somebody; and—and truthfulness, as to whether he, possibly on a false official statement-type of charge. So, I believe that goes to—to a defense, as opposed to what the purpose that the evidence came in, and that was to show that the accused was credible and believable, and that he should be believed under oath, in either, his testimony in court or his

prior statement to the NCIS, would be believed under oath.

*Id.* at 779.

Rather than giving the defense-requested instruction, the military judge gave the following instruction concerning evidence of the appellant's truthfulness. "Now, evidence has been received as to the accused's good character for truthfulness. You may consider this evidence in determining the accused's believability." *Id.* at 833. He immediately followed that with an instruction concerning the victim's credibility. "Evidence has been received as to [the victim's] bad character for truthfulness. You may consider this evidence in determining her believability." *Id.*

■■■ A military judge is required to give the court-martial members "appropriate instructions" on findings. R.C.M. 920(a). This court examines a military judge's refusal to give a defense-requested instruction under a clear abuse of discretion standard. *United States v. Maxwell,* 45 M.J. 406, 424 (C.A.A.F.1996)(citing *United States v. Damatta–Olivera,* 37 M.J. 474, 478 (C.M.A. 1993)). When determining whether a military judge properly exercised discretion in refusing to give a defense-requested instruction, we "examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." *Maxwell,* 45 M.J. at 424 (quoting *United States v. Snow,* 82 F.3d 935, 938–39 (10th Cir.1996)). The question of whether a court-martial was properly instructed is a question of law, which we review *de novo. Id.* This court's standard for the adequacy of instructions is "whether the instructions as a whole provide meaningful legal principles for the court-martial's consideration." *United States v. Peszynski,* 40 M.J. 874, 882 (N.M.C.M.R.1994)(citing *United States v. Truman,* 42 C.M.R. 106, 109, 1970 WL 7011 (C.M.A.1970)). Finally, our superior court has held that a military judge's denial of a defense-requested instruction is error where: "(1) the requested instruction is correct; (2) 'it is not substantially covered in the main charge; and (3) it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired

its effective presentation.'" *United States v. Poole,* 47 M.J. 17, 19 (C.A.A.F.1997)(quoting *Damatta–Olivera,* 37 M.J. at 478).

■■■ We recognize the general principle, as did the trial judge, that character evidence alone may be sufficient to give rise to reasonable doubt. *See United States v. Court,* 24 M.J. 11 (C.M.A.1987). We, however, hold that there was no instructional error in this case for three reasons. First the requested instruction was not legally correct. "[I]n legal principle, character evidence as to truthfulness—unlike other types of character evidence—does not bear *directly* on guilt or innocence unless it is, in a particular case, a 'pertinent trait', say, in a prosecution for false official statement." *United States v. Yarborough,* 18 M.J. 452, 457 (C.M.A.1984)(emphasis in original) (citations omitted). Here, the evidence of the appellant's truthfulness was clearly offered to bolster his credibility, and not as a pertinent character trait under MILITARY RULE OF EVIDENCE 404(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). Second, the issue of the appellant's credibility was adequately covered in the instructions given by the military judge, and was directly juxtaposed to instructions concerning the evidence of the victim's bad character for truthfulness. Finally, the instructions did not deprive or impair appellant's ability to effectively argue the credibility issues to the members. Thus, the military judge did not abuse his discretion when he did not give the defense-requested instruction.

**Pretrial Issues**

In AOE XII the appellant argues that the findings and sentence should be set aside because the charges had been originally referred to a special court-martial, and because the record does not contain an explanation of why the charges were withdrawn and re-referred to a general court-martial. In AOE XIII the appellant asserts that the charges against him were not properly referred to trial. He alleges that there is a fatal jurisdictional flaw in the referral of the charges against him because the charges he actually faced at this court-martial were re-preferred after the conclusion of the Article 32, UCMJ,

investigation. In AOE XIV the appellant alleges that the Article 32, UCMJ, investigation was fatally defective, primarily because numerous civilian witnesses did not testify at the investigation. These three assignments of error were submitted pursuant to *Grostefon*. Appellant's Brief at 38–45. We have examined the appellant's claims, and find no basis upon which to grant relief.

■ With respect to AOE XII, we apply waiver. The appellant did not raise this issue at trial where it could have been easily resolved. *See generally United States v. Richter*, 51 M.J. 213, 224 (C.A.A.F.1999)(holding that such issues are waived if not raised at trial). Since there is no requirement that the convening authority document his decision in any particular form, *United States v. Williams*, 55 M.J. 302, 305 (C.A.A.F.2001), if the appellant had raised the issue at trial an oral explanation of the withdrawal and re-referral could have been provided in the record of trial. *Id.*

With respect to AOEs XIII and XIV, we initially note that we have previously considered the substance of these issues and resolved them against the appellant in *Diaz v. United States*, 54 M.J. 880 (N.M.Ct.Crim. App.2000). Although that case was brought by the appellant seeking an extraordinary writ, in which our standard of review is decidedly different than it is now, we rejected the **substance** of the appellant's argument in that decision. For the same reasons we relied upon in that decision, we conclude that the military judge did not abuse his discretion in denying the appellant's request for a new Article 32, UCMJ, investigation. *Id.* at 883. Furthermore, Article 32(e), UCMJ, specifically states that the failure to follow the requirements of Article 32, UCMJ, "does not constitute jurisdictional error." *See Frage v. Moriarty*, 27 M.J. 341, 343 (C.M.A. 1988). We conclude that the appellant's substantial rights were not materially prejudiced by the manner in which the appellant's Article 32, UCMJ, investigation was conducted, the manner in which the charges upon which he stood trial were preferred and referred to court-martial, or by the military judge's denial of the appellant's request for a new Article 32, UCMJ, investigation.

### Testimonial Evidence

■ The appellant has raised three separate AOEs in which he alleges that the military judge erred by his decisions to either admit or exclude evidence. With respect to these AOEs, the same standard of review applies. A military judges decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F.2003)(citing *United States v. McElhaney*, 54 M.J. 120, 132 (C.A.A.F.2000)). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F.2004). We conclude that the military judge did not abuse his discretion in any of these three issues raised by the appellant. Furthermore, even if the military judge's rulings in each of these three instances were incorrect, there is no showing that the error materially prejudiced a substantial right of the appellant. *United States v. Reist*, 50 M.J. 108, 110 (C.A.A.F.1999)(citing Art. 59(a), UCMJ). We, therefore, decline to grant relief.

A. Expert Witness.

■ In AOE VII the appellant contends that the military judge erred in allowing the Government to present the expert testimony of Dr. Kahn. The appellant asserts that the Government called this witness to try to repair damage to its case when the victim's mother testified that medical records showed that the victim had engaged in sexual intercourse. Appellant's Brief at 26–27. The appellant now argues that the military judge erred in admitting the expert testimony of Dr. Kahn because the "testimony could not, in any way, help the members understand the medical evidence (as there was none) or determine any fact in issue and could only serve to confuse them with respect to the significance of inconclusive evidence." *Id.* at 28. The appellant also attacks the credentials of Dr. Kahn as an expert witness. Appellant's Supplemental Reply Brief at 3–4.

We find no abuse of discretion, nor do we find prejudice. First, we note that the military judge admitted the evidence because the

appellant raised the issue during his cross-examination of the victim's mother. Record at 528. Second, we reject the appellant's premise that the testimony was not helpful. In fact, we find that it was helpful in this case. The absence of physical findings of sexual abuse in a medical evaluation of a potential victim of child sexual abuse or rape could easily lead to the conclusion that no abuse occurred. Dr. Kahn was able to explain to the members that the absence of physical findings in such examinations is not inconsistent with sexual abuse or rape of a child. Thus, the absence of physical findings does not necessarily mean that the abuse or rape did not occur. Third, while the military judge may have had misgivings about the helpfulness of Dr. Kahn's testimony, in retrospect, we find that it was highly helpful. Thus, the testimony was admissible. *United States v. Meeks*, 35 M.J. 64, 68 (C.M.A.1992). Finally, we find that Dr. Kahn was adequately qualified to render an opinion as an expert in "child sex assault." Record at 530–39.

B. Impeachment.

 In AOE VIII the appellant alleges that the military judge erred when he refused to allow the appellant to impeach the victim's sister with a prior inconsistent statement. The appellant called the victim's sister as a witness. During that testimony the following exchange occurred:

Q. [B]ased on your opinion as [the victim's] sister, living in the same house with her your whole life, do you believe [she] is a truthful person?

A. At times. But—she wouldn't lie about something like this, but we all do tell little—white lies, at times, but in this case—

Q. Do you remember—I'm sorry, go ahead.

A. But, in this case, I don't think she would lie.

Q. Do you remember when I talked to you, way back when, when I came to your house——

MJ: Okay, Where you going with this?

DC: Well, she said [the victim] has a tendency to lie, then, sir. I'm trying to establish that.

MJ: I'm not going to go in to that.

DC: Well, sir, she's made an untrue statement. The jury's entitled to know. She said that [the victim] has a tendency to lie.

ATC: Your Honor, if we're going to argue that objection, please, can we excuse the members?

MJ: Yes. Members?

BAILIFF: All rise.

[All persons did as directed and the members withdrew from the courtroom.]

Record at 653–54. Thereafter the military judge explained his ruling to the defense counsel. In essence, he ruled that the appellant could ask the witness her opinion as to the victim's character for truthfulness, but he could not impeach the witness because she may have said the victim had a tendency to lie. The military judge explained that stating that someone had a tendency to lie is not the same thing as one's opinion as to truthfulness. *Id.* at 656. The military judge ruled that the appellant could ask the witness if she believed the "[victim] is an untruthful person." *Id.* at 659. The appellant did not ask the question. The appellant now asserts that this exchange prevented him from impeaching the witness with a prior inconsistent statement.

We conclude that the military judge did not abuse his discretion in this ruling. Not only do we review a military judge's decision to exclude evidence for an abuse of discretion, but a "military judge has considerable discretion to determine if trial testimony is inconsistent with earlier assertions and to determine both admissibility and use of prior statements." *Damatta–Olivera*, 37 M.J. at 478. Here when the witness was asked if she believed that the victim was truthful, her immediate response was not "yes," but rather, "at times." Record at 653. The military judge concluded that the witness' earlier statement that the victim had a tendency to lie was not inconsistent with the witness' testimony. We concur.

In AOE XVIII, submitted pursuant to *Grostefon*, the appellant makes the same argument with respect to Naval Criminal Investigative Service (NCIS) Special Agent (SA) Degnan. He argues that he was pre-

vented from impeaching SA Degnan with a prior inconsistent statement. In this instance, the Government called SA Degnan. During cross-examination he testified that the only evidence against Chief Diaz as to the rape specification was the word of the victim. *Id.* at 601. Appellant's counsel sought to press the point, asking, "[t]here's no physical evidence in this case, correct?" SA Degnan responded that he did not know if there was medical evidence because he was not a medical officer. *Id.*

The defense counsel then attempted to impeach SA Degnan with his prior inconsistent testimony at the Article 32, UCMJ, investigation in which he answered "no" to an almost identical question. *Id.* at 602. The government objected, and the military judge ruled in an Article 39(a), UCMJ, session, "I'm not going to even let you go into prior inconsistent statements regarding the—regarding the medical evidence. He's already testified that he's not a doctor, and you already have out that the medical evidence showed nothing." *Id.* at 604. We note, however, that the defense counsel actually used the same prior inconsistent statement to impeach the witness over exactly the same issue only moments before. *Id.* at 600–01. Given the context in which this exchange between defense counsel and SA Degnan occurred, we find no abuse of discretion.

Furthermore, even if the military judge erred when he denied the appellant the opportunity to impeach the victim's sister and SA Degnan through the use of prior inconsistent statements, the error did not result in material prejudice to the appellant's substantial rights. *Reist,* 50 M.J. at 110 (citing Art. 59(a), UCMJ). With respect to the victim's sister, she testified that the victim was truthful at times. Other witnesses testified as to the victim's poor character for truthfulness, and during instructions on findings the military judge highlighted that fact to the members. With respect to SA Degnan, as noted above, he was impeached by his prior statement.

## C. Defense Requested Witnesses.

■ In AOE III, the appellant alleges that the military judge erred when he al-

lowed the Government to select which defense-requested witnesses it would produce at Government expense. Prior to trial, the ·appellant sought the production of nine witnesses to testify as to the appellant's good military character. Appellate Exhibit XXVII. When the Government denied those witnesses the appellant raised the issue before the military judge. The military judge, having determined that the appellant could introduce evidence of good military character, asked the defense to prioritize the requested witnesses. The defense provided the following prioritization: 1. CWO4 Horton; 2. LT Hernandez; 3. CDR McGettigan; 4. CWO DeBold; 5. LT Miller; 6. Mr. Lamb; 7. YN1 Torres–Leon; 8. Mr. Zins; and 9. CAPT Spicer. Record at 133–34. The military judge then ruled as follows:

> Here's what I'm going to do. I'm going to order the production of four of the witnesses. And, what I'll do is, I will permit the government to make—deny one of the four, based purely on the expense. In other words, if the government says we don't want to bring in the witness from Yokosuka, because it will cost a lot of money, I'll permit you to make that one, based purely upon—after that, I would ask you to go down—and I'm not saying you should deny Lieutenant Hernandez, but I would ask you to go down the—go down, by the defense's preference, and I will, however, permit, if there is a[n] operational requirement as to why a witness—an operational—sometimes it's not even operational, it's a personal—a witness has a—his wife is sick, or expecting a baby or something, I'll permit you to go on to the next one, if you have a good basis for that. I'm going to give the government one, probably the [inaudible]—or just because it's a long way for the witness to come and for the expense. Frankly, defense, I gave you—I weighed it and rather than—I kind of gave the—I've given to the government, in my mind, I believe I've given you an extra one, to make up for them being able to choose. So you can approve three and give the other ones—let you deal with the other one however you want. But, I'm giving the government a little something,

because I am giving you something in return.

Record at 134–35. The appellant did not object to this ruling. Additionally, the appellant did not offer evidence of good military character on the merits. During sentencing, the appellant presented the testimonies of Mr. Horton, CDR McGettigan, LT Miller, and Mr. Zins, and affidavits from LT Hernandez, CWO2 DeBold, Chief Lamb, and CAPT Spicer.

Without question, the ruling of the military judge lacks clarity. We are not exactly sure what the ruling means. It seems, however, that he told the Government to produce four witnesses, that the Government could deny one witness of the four proposed by the appellant, but four witnesses would be produced. We conclude that the issue was waived by the appellant's failure to object to the procedure. *See generally United States v. Ruth*, 46 M.J. 1, 2 (C.A.A.F.1997). Furthermore, since the appellant did not introduce evidence of good military character on the merits, we discern no material prejudice to the appellant's substantial rights that flowed from the military judge's ruling. *Reist*, 50 M.J. at 110 (citing Art. 59(a), UCMJ).

### Speedy Review

 In the appellant's tenth AOE, he asserts that he has been denied his statutory and constitutional right to a speedy review of his case. As relief he requests that the findings and sentence be set aside, or that he be granted two days sentencing credit for every one day he served in post-trial confinement between 1 December 2000 and 5 August 2003. We decline to grant relief.

We are cognizant of this court's power under Article 66(c), UCMJ, to grant relief for excessive post-trial delay even in the absence of actual prejudice. *See United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F.2002). We are also cognizant of the post-trial timeline of this case and the holding of our superior court in *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34 (C.A.A.F.2003). We have fully complied with the Decision and Order in that case. *Id.* at 40.

While we do not condone the post-trial delay in this case, we do not find that the delay affected the "findings and sentence [that] 'should be approved,' based on all the facts and circumstances reflected in the record...." *Tardif*, 57 M.J. at 224. In deciding that this case is not one in which relief should be granted as a result of post-trial delay, we have considered the fact that in our detailed review of the appellant's record of trial and upon consideration of all of the post-trial pleadings, we have found no errors that materially prejudiced any of the appellant's substantial rights. The appellant would be granted a windfall were we to afford him relief simply because of the period of time it took to review the lengthy record of trial and consider the appellant's numerous appellate issues.

### Conclusion

We have considered the remaining assignments of error and concluded they are without merit. Accordingly, we affirm the findings and sentence as approved by the convening authority.

Judge SCOVEL and Judge SUSZAN concur.