IN THE CASE OF


UNITED STATES, Appellee

v.

Spencer W. QUICK, Private
U.S. Marine Corps, Appellant

No. 03-0566

Crim. App. No. 200001657

United States Court of Appeals for the Armed Forces

Argued February 11, 2004

Decided April 19, 2004

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and BAKER, JJ., joined. CRAWFORD, C.J., filed
an opinion concurring in the result.

Counsel

For Appellant: Commander Michael J. Wentworth, JAGC, USNR
(argued); Lieutenant Commander Eric J. McDonald, JAGC, USN (on
brief).

For Appellee: Lieutenant Christopher J. Hajec, JAGC, USNR
(argued); Commander Robert P. Taishoff, JAGC, USN (on brief);
Lieutenant Frank L. Gatto, JAGC, USN.

Military Judge: R. H. Kohlmann


**This opinion is subject to editorial correction before final publication**.

United States v. Quick, No. 03-0566/MC

Judge ERDMANN delivered the opinion of the Court.

Appellant, Private (E-1) Spencer W. Quick, was tried by a military judge sitting as a general court-martial. He entered guilty pleas to rape, wrongful appropriation, robbery, assault with the intent to inflict grievous bodily harm and kidnapping in violation of Articles 120, 121, 122, 128 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920, 921, 922, 928 and 934 (2000), respectively. Following an inquiry into the providence of his pleas, he was convicted of all charges. Quick was sentenced to a dishonorable discharge, confinement for 65 years and forfeiture of all pay and allowances. Pursuant to a pretrial agreement, the convening authority approved the sentence but suspended all confinement in excess of 30 years.[1]

The Navy-Marine Corps Court of Criminal Appeals reviewed the conviction pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000). That court consolidated the robbery and aggravated assault specifications into a single specification under Article 122, affirmed the consolidated specification and remaining charges, reassessed the sentence, and affirmed the adjudged sentence as approved by the convening authority. United States v. Quick, NMCM 200001657 (N-M. Ct. Crim. App. April 18, 2003).

---

[1] The suspended portion of Quick's sentence terminates 12 months after he is released from confinement.

2

United States v. Quick, No. 03-0566/MC

Quick petitioned this Court and we granted review of the following issue:

> WHETHER THE LOWER COURT ERRED IN CONCLUDING THAT APPELLANT WAS NOT PREJUDICED BY HIS TRIAL DEFENSE COUNSEL'S CONCESSION DURING HIS SENTENCING ARGUMENT THAT APPELLANT DESERVED A DISHONORABLE DISCHARGE, AND THAT CONFINEMENT FOR 40 YEARS OR LESS WAS NOT EXCESSIVE, BECAUSE "THE REASONABLE LIKELIHOOD THAT THE APPELLANT WOULD HAVE RECEIVE[D] AT LEAST A DISHONORABLE DISCHARGE AND CONFINEMENT WELL IN EXCESS OF 40 YEARS CANNOT BE DOUBTED."

We find that Quick has failed to meet his burden of showing prejudice under the ineffective assistance of counsel test set forth in Strickland v. Washington, 466 U.S. 668 (1984) and therefore affirm the decision of the Court of Criminal Appeals.

FACTS

Quick's guilty pleas arose out of a number of offenses he committed in the early morning hours of June 2, 1999. After spending the previous night drinking at an "adult" nightclub, Quick hired a taxi driven by a young woman. He initially directed her to drive to various places in an unsuccessful search for a friend. He then had her drive to his barracks at Camp LeJeune and as he was getting out of the taxi, he noticed a rock on the floor. He grabbed the driver by the neck and pulled her into the back seat where he struck her several times on the head with the rock.

3

Following the assault, Quick drove the taxi from Camp LeJeune to a rural area where he raped the semi-conscious driver.  He then drove the cab around with the driver in the back seat until it ran out of gas.  Quick took $110.00 that he found in the cab and fled the scene, leaving the driver alone and injured.

Based on his pleas, his admissions during the providence inquiry and the stipulation of fact, the military judge found Quick guilty of rape, wrongful appropriation of a vehicle, robbery, aggravated assault and kidnapping.  Quick was advised by the military judge that based on his pleas alone he faced a maximum sentence that included, inter alia, a dishonorable discharge and confinement for life without parole.

During his sentencing case, Quick made a brief unsworn statement in which he apologized to his victim, his mother, and the Marine Corps.  He asked for forgiveness but made no mention of any specific type of punishment.  Defense counsel, in concluding his sentencing argument, stated:

> [Quick] is not the animal that the
> [G]overnment presents to you and says,
> ["]Lock him up and throw away the key and
> let him die behind bars.["]  The defense has
> no reason to argue a lesser type of
> discharge other than a dishonorable is
> proper in this case.  The defense concedes
> that [it] is.  This type of conduct truly
> deserves to be labeled as dishonorable.  The
> other punishments are collateral.  They have
> no real consequences in the outcome of this
> case.  But the real issue is: How much time

4

is enough? How long does he deserve to be locked up[?]

He won't go . . . prey on people again. He does not have that tendency in his life. There's no indication that he's ever been violent.  He's never abused other women. And that's a predicament that he won[']t give us in the future, especially when he gets an opportunity to receive the type of treatment that he does.  A period of confinement in a term of years is adequate, Your Honor, to punish him, to let society know he has been punished, to allow him to accomplish one of the goals of punishment in a sentence of rehabilitation, and to give him light at the end of the tunnel that may allow him, one day, to get out and adjust and live life again.

<u>The defense will argue that any period of confinement in excess of 40 years is excessive</u>.  It is not necessary.  Not for the military judge, who has a horribly difficult task here, to work through all of this stuff and try to understand this particular individual.  And to try to scope and mold a punishment that will adequately punish him and serve the needs of justice in the military in that particular accused, Your Honor.

(Emphasis added.)  The military judge sentenced Quick to a dishonorable discharge, confinement for 65 years and forfeiture of all pay and allowances.  Pursuant to Quick's pretrial agreement, the convening authority suspended all confinement in excess of 30 years for a period of 12 months following Quick's release from confinement and approved the remainder of the sentence as adjudged.

Before the Court of Criminal Appeals, Quick claimed that his counsel provided ineffective assistance when he "conceded

the appropriateness of a dishonorable discharge and confinement of up to 40 years." The Court of Criminal Appeals concluded that defense counsel's sentencing argument constituted deficient performance when he conceded the appropriateness of the dishonorable discharge where the record did not reflect Quick's agreement. The lower court concluded, however, that Quick had not demonstrated prejudice and therefore failed to carry his burden of demonstrating ineffective assistance of counsel.

On appeal to this Court, Quick again raises the argument that his counsel provided ineffective assistance in conceding the appropriateness of a dishonorable discharge and confinement of up to 40 years. In addition, Quick asserts that the Court of Criminal Appeals applied the wrong standard in determining that there was no prejudice. We review this decision of the Court of Criminal Appeals de novo as a question of law. See United States v. Key, 57 M.J. 246, 249 (C.A.A.F. 2002); United States v. Sales, 56 M.J. 255 (C.A.A.F. 2002).

DISCUSSION

Quick's claim that defense counsel rendered ineffective assistance is reviewed under the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial

6

process that the trial cannot be relied on as having produced a just result." Id. at 686. To determine whether the result in any particular case was unreliable, the Supreme Court went on to establish a two-prong test:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable.

Id. at 687. Key, 57 M.J. at 249.

The burden on an appellant is heavy because counsel is presumed to have performed in a competent, professional manner. To overcome this presumption, an appellant must show specific defects in counsel's performance that were "unreasonable under prevailing professional norms." United States v. Anderson, 55 M.J. 198, 201 (C.A.A.F. 2001).

There is, however, no particular order that must be followed in analyzing an ineffective assistance of counsel claim. "[A] court need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see also United States v. Adams, __ M.J. __, __ (C.A.A.F. 2004); United States v. McConnell, 55 M.J. 479, 481 (C.A.A.F. 2001).

Although the Court of Criminal Appeals correctly concluded that the trial defense counsel improperly conceded the appropriateness of a dishonorable discharge where the record was silent as to the wishes of his client, see, e.g., United States v. Dresen, 40 M.J. 462, 465 (C.M.A. 1994), that court did not address trial defense counsel's concession regarding the appropriate amount of confinement. Because we can resolve this case by addressing the prejudice prong of Strickland, we need not decide whether the trial defense counsel's concession as to confinement met the first prong of Strickland. In addressing the prejudice prong, it is first necessary to examine Quick's claim that the Court of Criminal Appeals used the wrong standard in analyzing prejudice.

The Court of Criminal Appeals properly cited Strickland and the appropriate standard for evaluating ineffective assistance of counsel. That court went on, however, to cite our decision

in United States v. Pineda, 54 M.J. 298 (C.A.A.F. 2001), a case that also involved a claim of ineffectiveness of counsel based on the concession of a punitive discharge by the defense counsel where the record did not reflect the appellant's agreement. Although this Court relied on the Strickland prejudice standard in Pineda, the opinion did include the following language: "[W]here the facts of a given case compel a conclusion that a bad-conduct discharge was reasonably likely, we do not normally order a new sentence hearing." Id. at 301.

Quick argues that whether a particular result was "reasonably likely" is not the proper standard and goes on to argue that the "Court of Criminal Appeals must be persuaded beyond a reasonable doubt that its reassessment has rendered that constitutional deprivation harmless." At oral argument the Government asserted that while the Strickland test is generally the appropriate test for assessing prejudice, Pineda established a different test for ineffective assistance of counsel cases that involve an improper concession of a punitive discharge by defense counsel.

We agree with Quick that the Court of Criminal Appeals utilized the wrong standard in analyzing the prejudice prong of Strickland, but disagree with his assertion that "beyond a reasonable doubt" is the correct standard. Quick appears to argue that once he meets the first prong (deficient performance)

under Strickland, he has shown a constitutional violation which shifts the burden to the Government to demonstrate that the deficient performance was harmless beyond a reasonable doubt. Quick misperceives the test. The Supreme Court in Strickland established a two-prong test which must be met before there is a finding of constitutional violation. Absent a showing of both deficient performance and prejudice, there is no constitutional violation under Strickland.

The second prong of the Strickland test does not include the "reasonably likely" language relied on by the Court of Criminal Appeals. Rather, the appropriate test for prejudice under Strickland is whether there is a reasonable probability that, but for counsel's error, there would have been a different result. 466 U.S. at 694. The Court of Criminal Appeals properly cited Strickland as controlling authority and that is the standard it should have applied, not a standard measuring whether the sentence adjudged was "reasonably likely."

In Pineda, this Court assessed prejudice "under the second prong of the test in Strickland." 54 M.J. at 301. To the extent that the language in Pineda referenced by the Court of Criminal Appeals has caused uncertainty in regard to the proper standard for prejudice in cases involving concessions of punitive discharges, we take this opportunity to clarify that the Strickland test is the proper vehicle for reviewing a claim

that a defense counsel provided ineffective assistance of counsel by conceding the appropriateness of a punitive discharge.

We now turn to the prejudice prong of Strickland – is there a reasonable probability that, absent the error, there would have been a different result?

Quick's pleas, his admissions during the providence inquiry and the stipulation of fact reveal a brutally senseless crime. For no explained reason, and certainly with no provocation, Quick struck the taxi driver with a rock several times inflicting, among other injuries, a "severe concussion . . . deep cuts to the head . . . swelling and discoloration of the tongue, and a brain contusion."  This assault was but a first step in a course of conduct marked by a total disregard for the physical well-being and human dignity of the victim.  After having beaten, kidnapped and raped her, Quick ultimately abandoned her in a rural area.

Given the nature of the crime there is no reasonable probability that, even if defense counsel had not conceded a dishonorable discharge and argued for 40 years confinement, there would have been a different result.  This is underscored by the fact that this was a trial by military judge alone.  The record does not reveal that the military judge was perceptibly swayed by defense counsel's concessions.  To the contrary, in

11

the face of trial counsel's argument that Quick be confined for life, the military judge appears to have exercised independent judgment in determining an appropriate sentence.

While the Court of Criminal Appeals applied the wrong standard in their prejudice analysis, the result does not change.  Under the facts of this case, there is no reasonable probability that, absent the error, the result would have been different.  Quick has failed to meet his burden to establish prejudice under the Strickland test.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Quick, No. 03-0566/MC

CRAWFORD, Chief Judge (concurring in the result):

I agree with the majority that Appellant suffered no prejudice from defense counsel's allegedly deficient performance. I disagree, however, that "trial defense counsel improperly conceded [during the sentencing argument] the appropriateness of a dishonorable discharge" and that any period of confinement in excess of forty years is excessive. ___ M.J. (8). In my view, counsel's concession was an appropriate tactical decision aimed to ensure his credibility with the court-martial and assess reasonable sentencing probabilities. To this end, counsel would have been remiss not to concede the appropriateness of a dishonorable discharge and a lengthy period of confinement. Accordingly, I concur only in the result of the lead opinion.

Both the Sixth Amendment and Article 27, Uniform Code of Military Justice, 10 U.S.C. § 827 (2000), guarantee an accused the significant right to effective assistance of counsel. United States v. Fluellen, 40 M.J. 96, 98 (C.M.A. 1994). Importantly, there are "countless ways to provide effective assistance in any given case." Strickland v. Washington, 466 U.S. 668, 689 (1984). As to effective assistance during the closing and sentencing argument, "deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense

strategy at that stage." <u>Yarborough v. Gentry</u>, ___ U.S. ___, ___, 124 S.Ct. 1, 4 (2003)(per curiam). Such arguments should "sharpen and clarify the issues for resolution by the trier of fact, but which issues to sharpen and how best to clarify them are questions with many reasonable answers." <u>Id.</u> (citation and internal quotation marks omitted).

Defense counsel's concession in the instant case was, in my view, a legitimate tactical decision to which this Court should afford great deference. "[C]onfessing a client's shortcomings . . . is precisely the sort of calculated risk that lies at the heart of an advocate's discretion. By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case." <u>Id.</u> at 6. The same tactic was famously employed by Clarence Darrow in the Leopold and Loeb case:

> I do not know how much salvage there is in these two boys . . . . [Y]our Honor would be merciful if you tied a rope around their necks and let them die; merciful to them, but not merciful to civilization, and not merciful to those who would be left behind.

<u>Id.</u> at 6-7 (quoting <u>Famous American Jury Speeches</u> 1086 (Hicks ed. 1925)(reprint 1990)). In this vein, counsel's concession that Appellant's conduct "deserves to be labeled as dishonorable" and "that any period of confinement in excess of forty years is excessive" was a calculated attempt to build credibility with the judge.

Moreover, defense counsel appropriately realized that given the severity of Appellant's offenses and the resultant injuries to the victim, counsel's best argument was to limit the difference between the sentence cap on the pretrial agreement and any sentence announced and approved by the convening authority. Appellant's pretrial agreement permitted the convening authority to suspend any confinement in excess of 30 years. Suspension of confinement, unlike disproval of confinement, can be revoked upon further misconduct by the accused. Given Appellant's established history of criminal offense and alcohol abuse, defense counsel astutely acknowledged the likelihood of future misconduct, and therefore the likelihood of the suspension's revocation. In short, by conceding that confinement over 40 years would be excessive, counsel in effect limited to ten years the additional confinement Appellant would serve were his suspension revoked.

Finally, counsel's concession as to excessive confinement was also a legitimate attempt to avoid an unfavorable life sentence for Appellant. Appellant would earn 10 days of "good time" credit each month for his 30 year sentence, but no "good time" credit for a life sentence. U.S. Dep't of Defense, Instruction 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority, Enclosure 26.1.1-

.5 (July 17, 2001).[*]  In this light, defense counsel not only negotiated a favorable deal for Appellant, but by making a credible sentencing argument, may well have avoided a sentence of life or life without parole.

Given the reasonable tactical motives behind defense counsel's concession, as well as the substantial deference this Court should afford counsel when analyzing ineffective assistance claims, I cannot find the concession improper.  On the contrary, defense counsel's actions on Appellant's behalf were entirely consistent with the "wide range of reasonable professional assistance" considered to be effective.  Strickland, 466 U.S. at 689.  Concluding otherwise, as the majority does, will result in a disservice to accuseds by encouraging counsel to be timid in employing pro forma sentencing arguments simply to avoid ineffectiveness claims.  Accordingly, I concur only in the lead opinion's ultimate result.

---

[*] The current instruction is materially identical to the one in effect at the time of trial.