**UNITED STATES**

v.

**Cadet Nathan D. VAN VLIET,
United States Air Force.**

**ACM 36005.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 13 May 2004.

6 Nov. 2006.

Appellate Counsel for Appellant: Frank J. Spinner (argued), Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, Major Sandra K. Whittington, and Major David P. Bennett.

Appellate Counsel for the United States: Captain Jefferson E. McBride (argued), Colonel Gary F. Spencer, and Lieutenant Colonel Robert V. Combs.

Before ORR, FRANCIS, and SOYBEL, Appellate Military Judges.

## OPINION OF THE COURT

ORR, Senior Judge:

Consistent with his pleas, the appellant was convicted by a general court-martial of making a false official statement, larceny and housebreaking, in violation of Articles 107, 121 and 130, UCMJ 10 U.S.C. §§ 907, 921, 930. The military judge sentenced the appellant to a dismissal and confinement for 19 months. The convening authority approved the findings and sentence as adjudged.

The appellant does not challenge the findings of his court-martial. Instead, the appellant contends that (1) he received ineffective assistance of counsel, and (2) that the staff judge advocate failed to correctly advise the convening authority in his staff judge advocate's recommendation. For the reasons set forth below, we find error and set aside the convening authority's action.

### Ineffective Assistance of Counsel

In his first assignment of error, the appellant claims he was denied effective assistance of counsel because his counsel failed to fully and accurately inform him of his right to submit a resignation in lieu of a trial by court-martial. We disagree.

■■■ Claims of ineffective assistance of counsel are reviewed de novo. *United States v. Wiley*, 47 M.J. 158, 159 (C.A.A.F.1997). To prevail on a claim of ineffective assistance of counsel, the appellant must show (1) that counsel's performance was deficient; and (2) that counsel's deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The deficiency prong of *Strickland* requires that the appellant show that his counsel's performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Id.* There is a "strong presumption" that counsel was competent. *Id.* at 689, 104 S.Ct. 2052. The prejudice prong requires that the appellant show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Even if the trial defense counsel's performance was deficient, the appellant is not entitled to relief unless he was prejudiced by that deficiency. *United States v. Quick*, 59 M.J. 383, 385 (C.A.A.F. 2004) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

■■ Because the appellant raised this issue by submitting two post-trial affidavits, we will resolve the issue in accordance with the principles established in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F.1997). In *Ginn*, our superior court announced six prin-

ciples to be applied by courts of criminal appeals in disposing of post-trial, collateral, affidavit-based claims. We believe this Court may decide the appellant's claim of ineffective assistance without ordering a fact-finding hearing as authorized by *United States v. DuBay*, 37 C.M.R. 411, 1967 WL 4276 (C.M.A.1967), under the fourth *Ginn* principle, which states:

> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

*Ginn,* 47 M.J. at 248.

The appellant claims in his first affidavit that his trial defense counsel told him he could not submit a resignation in lieu of trial by court-martial (RILO) * because the convening authority had referred the charges for trial. The appellant avers that he did not know until after his trial that it was possible for him to submit a RILO once charges were referred. Upon learning this new information, he released his trial defense counsel and obtained a new defense counsel to help him prepare his clemency matters. On 19 April 2006, the appellant's trial defense counsel, Captain (Capt) GB submitted an affidavit in response, asserting that she advised the appellant of his right to submit a RILO and the appellant chose not to do so. Attached to Capt GB's affidavit is a copy of an e-mail sent to her by the appellant on 5 April 2004. In pertinent part, the e-mail reads as follows:

> I do not wish to have a RILO, and please try to get the best PTA that is possible. Thank you for your time and consideration.

Additionally, she submitted a memorandum titled, "Confidential, Attorney–Client Privileged Communication" signed by the appellant on 11 May 2004. Under a heading entitled, "My Decision on Pleas," appears the following:

> Captain GB has counseled me and explained my rights as an Accused facing court-martial charges
>
> . . . .

My counsel have informed me of my right to submit an offer for a pretrial agreement (PTA) and Request for a Discharge in Lieu of a Court–Martial

. . . .

> I have carefully read the above statement and I am aware that the above decisions were mine alone to make. I knowingly and voluntarily made the choice noted above.

After receiving Capt GB's affidavit, the appellant submitted a second affidavit stating, "[he] may have been confused in some parts of [his] memory" and her affidavit refreshed his memory about the possibility of submitting a RILO. He now asserts he elected not to submit a RILO prior to the trial because she told him it was unlikely that officials at the Air Force Academy would approve the RILO. The appellant claims if he had known that the RILO would have been forwarded to the Secretary of the Air Force, who was not bound by the recommendations of the Air Force Academy officials, he would have submitted a RILO before trial. As a result of her misinformation, he told Capt GB not to submit a RILO because it would only delay the trial.

Although the appellant asserts Capt GB did not fully explain the possibility of submitting a RILO before trial, his e-mail and signature at the bottom of the Confidential, Attorney–Client Privileged Communication memorandum indicate otherwise. These documents compellingly demonstrate that Capt GB and the appellant discussed the possibility of submitting a RILO prior to his trial. The fact that these documents were prepared over a month apart convinces us the appellant had ample time to decide whether or not he wanted to submit a RILO. We are convinced the appellant agreed with Capt GB's assessment that it was unlikely that his RILO would be approved and that asking her to seek the most favorable PTA possible was in his best interest. We, therefore, discount the appellant's factual allegations and hold that his trial defense counsel's assistance was not ineffective.

---

* Pursuant to Air Force Instruction 36–3207, *Sepa-* *rating Commissioned Officers,* ¶ 2.22 (9 Jul 2004).

*Staff Judge Advocate's Recommendation*

In his second assignment of error, the appellant avers the staff judge advocate (SJA) incorrectly advised the convening authority that the appellant's post-trial request to resign in lieu of trial by court-martial could not be processed because it was untimely. We agree.

The appellant's trial adjourned on 13 May 2004. As required by Article 60(d), UCMJ, 10 U.S.C. § 860(d), the SJA prepared a formal recommendation (SJAR) for the convening authority, and served it upon the defense for review and comment. The SJA recommended that the convening authority approve the sentence as adjudged. On 24 June 2004, the appellant and his counsel submitted a request for clemency, specifically asking that the convening authority disapprove the dismissal and reduce the appellant's confinement to one year. Additionally, the appellant submitted a Resignation for the Good of the Service, asking the convening authority not to take action on his conviction because his resignation would be a fair and just disposition of his case.

Thereafter, the SJA prepared an addendum to the earlier SJAR, and advised the convening authority that even though the appellant's RILO was untimely, he must consider the RILO as another request for clemency submitted by the defense. The appellant's defense counsel responded by stating that the appellant's RILO was not untimely and should be forwarded to the Secretary of the Air Force for action. Once again, the SJA advised the convening authority to consider all written matters submitted by the defense and recommended the convening authority approve the sentence as adjudged.

■ We review de novo, whether post-trial processing was properly completed. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F.Ct.Crim.App.2004). The appellant preserved his asserted legal error in the SJAR for appellate review by submitting his allegation of legal error with his clemency matters. *See* Rule for Courts–Martial (R.C.M.) 1105(b), (d). In reviewing an allegation of an erroneous recommendation, there must not only be error, there must also be prejudice to the rights of the accused. *United States v. Blodgett*, 20 M.J. 756, 758 (A.F.C.M.R.1985).

■ The government argues this Court lacks jurisdiction to determine whether the SJA correctly advised the convening authority because the convening authority's action on the RILO was not a "finding" or "sentence." As a result, the government avers, citing *Clinton v. Goldsmith*, 526 U.S. 529, 536, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999) that the RILO process is a collateral matter outside this Court's jurisdiction under Article 66(c), UCMJ, 10 U.S.C. § 866(c). We disagree.

By addressing the appellant's assignment of error, this Court is in no way attempting to limit, expand or disturb the exercise of UCMJ authority by either the convening authority or the Secretary of the Air Force. See *United States v. Chisholm*, 58 M.J. 733, 736 (Army Ct.Crim.App.2003). We are only addressing the appellant's allegation of possible prejudice because the convening authority took action on his case without forwarding his RILO to the Secretary. The appellant asserts the convening authority's decision not to process his RILO was based on the advice he received from the SJA.

■ Without question, the Secretary has the authority to promulgate regulations authorizing an officer to resign rather than face court-martial. *United States v. Woods*, 26 M.J. 372, 374 (C.M.A.1988). It seems counterintuitive to authorize the submission of a RILO by an officer after the conclusion of his court-martial, but Air Force Instruction (AFI) 51–201, *Administration of Military Justice* (26 Nov 2003) seems to indicate otherwise. Specifically, AFI 51–201, paragraph 8.9.2 reads:

> AFLSA/JAJM will normally approve requests to proceed to trial while a RILO is pending, if the RILO is submitted more than seven days after the service of charges on the accused under R.C.M. 602. In those cases, the only justification necessary in the request to proceed to trial is the untimely submission of the RILO, but additional reasons may be submitted if they exist.
>
> . . . .

RILO processing should not be stopped or delayed, nor should the RILO be rejected for processing, based solely upon the time submitted. The RILO must still be forwarded through channels for Secretarial action, even if submitted more than seven days after service of charges under R.C.M. 602.

AFI 51–201, paragraph 9.8.5 reads:

The convening authority *must not*, under any circumstances, take any action under R.C.M. 1107 on any officer case in which an accused's resignation for the good of the service (RILO) is pending final SAF decision (see paragraph 8.9.).

After reviewing AFI 51–201, AFI 36–3207, *Separating Commissioned Officers* (9 Jun 2004), and the matters the appellant submitted in response to the SJAR, we are not convinced the appellant's RILO was untimely. First, the AFI does not preclude the submission of a RILO after the trial. Next, AFI 51–201, paragraph 8.9.2, states that any RILO submitted seven days after service of the charges must be forwarded and should not be rejected based solely on the time submitted. Moreover, Attachment 15 to AFI 36–3207, asks the applicant to state whether his conduct renders him subject to trial by court-martial or whether he is "serving under a suspended sentence to dismissal" and to set out any other punishments. Taken together, we conclude the regulations authorized the appellant to submit a RILO after his trial.

Therefore, the SJA's advice to the convening authority was erroneous because the proper course of action would have been to forward the appellant's RILO to the Secretary for final decision. After receiving an erroneous SJAR, the convening authority took action in violation of the AFI. Having found error, we must now determine whether the error has materially prejudiced a substantial right of the appellant. Article 59(a), UCMJ, 10 U.S.C. § 859. We conclude that it did.

We are not persuaded by the government's argument that the appellant may redress his complaint via other administrative processes. Because the convening authority has taken action on his case, the appellant now has a federal conviction. Article 71(b), UCMJ, 10 U.S.C. § 871(b) authorizes a service Secretary to suspend, remit or commute any part of a sentence that he or she sees fit. Article 74, UCMJ, 10 U.S.C. § 874 authorizes a service Secretary to substitute an administrative discharge for a dismissal, which was already executed with the sentence of a court-martial. Neither provision gives the Secretary the power to expunge a conviction once the convening authority has approved it. As a result, even if the Secretary now decides to approve the appellant's resignation, his federal conviction would remain if this Court approves the findings and the sentence. *Woods,* 26 M.J. at 373.

The convening authority was well aware of the appellant's desire to resign before he took action on the appellant's case. In spite of the SJA's efforts to seek the correct advice from his higher headquarters, he ultimately gave the convening authority erroneous advice. Although we will not speculate as to whether the Secretary will approve the appellant's RILO request, we are convinced that the convening authority did not have the authority to take final action in the appellant's case while Secretarial action on the appellant's RILO request was still pending. Therefore, we hereby set aside the convening authority's action.

### Conclusion

Accordingly, we return the record of trial to the Judge Advocate General for new post-trial processing consistent with this opinion. In the event the Secretary denies the appellant's RILO request, Article 66, UCMJ, shall apply.