# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

No. 201400373

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## DARIN G. LOPEZ
Intelligence Specialist Second Class (E-5), U.S. Navy
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Ian K. Thornhill, JAGC, USN.
Convening Authority: Commander, Navy Region Mid-Atlantic,
Norfolk, VA.
Staff Judge Advocate: Captain A.R. House, JAGC, USN.
For Appellant: William E. Cassara, Esq.; Lieutenant Doug
Ottenwess, JAGC, USN.
For Appellee: Major Cory A. Carver, USMC; Major Suzanne M.
Dempsey, USMC.

———————————

Decided 18 January 2017

———————————

Before PALMER, MARKS, and FULTON, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

PALMER, Chief Judge:

At a general court-martial, a military judge convicted the appellant, contrary to his plea, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The convening authority approved the adjudged sentence of three years' confinement and a bad-conduct discharge.

The appellant raises three assignments of error (AOE): (1) the evidence was legally and factually insufficient to sustain the conviction; (2) the trial defense counsel (TDC) was ineffective in failing to investigate and present evidence that the victim experienced memory blackouts before, during, and after the alleged sexual assault; and (3) the TDC was ineffective post-trial for failing to consult with the appellant before submitting clemency matters, thus entitling the appellant to a new post-trial review and action.

Regarding the third AOE, on 7 October 2015, we returned the case for remand to an appropriate convening authority to order a *DuBay* hearing[1] into the TDC's post-trial efforts or, alternatively, to withdraw the original action and complete new post-trial processing with a substitute TDC representing the appellant. The convening authority completed new post-trial processing and again approved the adjudged sentence on 11 February 2016. On 10 May 2016, the appellate renewed his original AOEs but raised no new error. The convening authority's new, unchallenged action renders the third AOE moot.

After reviewing the record and pleadings, we are satisfied that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant and the victim, Lance Corporal (LCpl) EH were casual friends who first met off-base, exchanged text messages, and had gone on a dinner date. LCpl EH was attending her entry level service school aboard an Army installation and was not in the same command as the appellant. On 24 November 2012, LCpl EH invited the appellant to join her at a nightclub. They socialized, and LCpl EH recalls drinking two mixed drinks and a shot of liquor. She became intoxicated, blacked out, and then awoke to find herself on a bed with the appellant on top of her engaging in sexual intercourse. She heard him say, "don't worry, I used a condom"[2] before she passed out again. LCpl EH ultimately reported the sexual assault to a Uniformed Victim's Advocate and to the Army's Criminal Investigation Command.

## II. DISCUSSION

### A. Legal and factual sufficiency

We review questions of legal and factual sufficiency *de novo. United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable

---

[1] *United States v DuBay*, 37 C.M.R. 411 (C.M.A. 1967).

[2] Record at 131; Appellate Exhibit (AE) XX at 3.

to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this review, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin,* 63 M.J. at 557.

A conviction for this sexual assault offense requires proof beyond a reasonable doubt of two elements: (1) that the appellant committed a sexual act upon LCpl EH, and (2) that LCpl EH was incapable of consenting to the sexual act due to impairment by an intoxicant and this condition was known or reasonably should have been known by the appellant. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 45.a(b)(3).

The appellant argues that the government failed to introduce sufficient evidence to prove LCpl EH was so impaired by intoxicants that she was incapable of consenting to the sexual act. Specifically, he argues the three drinks LCpl EH recalls consuming were insufficient to cause the requisite impairment. The appellant also points to a drug screen of LCpl EH's urine occurring less than two days after the assault that tested negative for any drugs that could have contributed to LCpl EH's impairment. The appellant argues LCpl EH's memory gaps and varying recollection of details before, during, and after the assault indicated she was either too intoxicated to form memories of the time of the alleged offense (yet not incapacitated) or was being untruthful in recounting her memories of the evening. Finally, the appellant asserts that because LCpl EH reported only having three drinks, and because she apparently departed the bar and went to his third-floor walk-up apartment under her own power, he had a reasonable belief that she consented to the sex acts. We disagree.

The military judge issued special findings, which we find are fully supported by the evidence. The special findings indicate the military judge correctly understood the burden of proof and the elements the government was required to prove in this case. In weighing the evidence, we too find LCpl EH to be highly credible as she testified to: feeling dizzy and extremely intoxicated; blacking out while "just standing there"[3] in the bar; waking up unable to move or speak; finding the appellant on top of her with his penis in her vagina; and hearing the appellant tell her, "don't worry, I used a condom,"[4] before she passed out again. LCpl EH awoke the following morning, alone, in the same room; she felt sick to her stomach, and her head hurt and was spinning; she was still wearing her dress, but a sleeve was pulled down and the bottom of the dress was "bunched up across her waist;"[5] and she was lying in vomit and urine.[6] The evidence shows, and the military judge found, that LCpl EH immediately took a shower still wearing the dress. While showering she noticed bite marks on her breasts and scratches on her back that had not been there the day before. After she showered, LCpl EH sat on the couch in the living room, wrapped in a towel while her dress was in the dryer. Although she could hear the appellant's voice, she did not see him in the apartment that morning. Eventually, without waiting for her dress to fully dry, she re-donned it and departed in a taxi. The taxi driver testified that LCpl EH appeared confused, desperate, and to have been crying. The driver offered to take LCpl EH to the police or hospital, but LCpl EH declined.

Finally, a subsequent search of the appellant's apartment revealed two used condoms in the trash, and the appellant stipulated the semen DNA profile inside both condoms matched his and the DNA profile from the outside of both condoms matched LCpl EH.[7]

Based on all the testimonial evidence presented at trial, and in particular LCpl EH's testimony that the appellant's penis was in her vagina, coupled

---

[3] Record at 129; AE XX at 3.

[4] Record at 131; AE XX at 3.

[5] Record at 133; AE XX at 3.

[6] The appellant takes issue with this conclusion, arguing that LCpl EH only "[a]t the time . . . believed [the bed] was wet with urine" but that she did not know it was, in fact, urine. Reply Brief on Behalf of Appellant dated 1 Sep 2015 at 3; Record at 159 and 162; AE XX at 3. We conclude that LCpl EH passing out in her own urine is a permissible inference reasonably drawn from the evidence. RULE FOR COURTS-MARTIAL 918 (c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012), Discussion.

[7] Prosecution Exhibit (PE) 4 at 2; AE XX at 4.

with the corroborating physical and forensic [DNA] evidence,[8] we easily find the charged sexual act occurred. Moreover, like the military judge, we find that the appellant's statement to LCpl EH, "don't worry I used a condom," while engaged in sexual intercourse with her, established that LCpl EH was at least initially not aware the sexual act was taking place because she was unconscious as a result of her intoxication—thus unable to consent.[9]

We are unpersuaded by the appellant's argument that the government was required to prove exactly *how* LCpl EH became intoxicated on the three drinks she recalls consuming. The government must only prove that her intoxication rendered her incapable of consenting and that her condition was known or reasonably should have been known by the appellant. The law is well settled that a "sleeping, unconscious, or incompetent person cannot consent." Art. 120(g)(8)(B), UCMJ; *United States v. Pease*, 74 M.J. 763, 770, (N-M. Ct. Crim. App. 2015). We are convinced beyond a reasonable doubt that LCpl EH was incapable of consenting when the appellant engaged in sexual intercourse with her. That she was incapable of consenting is supported by her testimony that she consumed alcohol, quickly became intensely intoxicated, was unable to remember how she left the bar and arrived at the appellant's apartment, awoke to the appellant engaging in sexual intercourse with her, passed out, and awoke again lying in urine and vomit,[10] still wearing the dress from the previous evening. And, most importantly, we find the appellant's statement that he was wearing a condom, made in the midst of sexual intercourse, establishes his awareness that she had been unable to comprehend his sexual advances and consent to his penetration.

Thus, after weighing all the evidence, the pleadings, and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

---

[8] PE 4 at 2.

[9] We agree with, without deferring to, the military judge's rationale that "[b]y attempting to 'comfort' her anticipated fears upon discovering he was performing sexual intercourse on her, [the appellant's] statement, including the word 'used' in the past tense, illustrates [the appellant] was aware LCpl E.H. was not able to consent, and in fact did not consent, to the sexual act from the outset." AE XX at 5.

[10] We are unpersuaded that the substance in LCpl EH's hair was semen or another bodily fluid discharged during sexual acts, particularly in light of the appellant's use of two condoms.

**B. Ineffective assistance of counsel**

The appellant argues his TDC's failure to develop or present evidence that LCpl EH may have experienced a memory blackout before, during, and after the sexual assault constituted ineffective assistance of counsel. The appellant also faults the TDC's failure to "investigate whether any of the drugs . . . in [LCpl EH's] medical records could have interacted with the alcohol she consumed to cause memory blackouts."[11]

We review claims of ineffective assistance of counsel *de novo*. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). The appellant must clear a high bar to prevail by showing: (1) that his counsel's performance was deficient, and (2) that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

The first prong of the *Strickland* test requires the appellant to show that counsel's performance fell below an objective standard of reasonableness, indicating that counsel was not functioning within the meaning of the Sixth Amendment. *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation. *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004). In assessing the claim of ineffective assistance, "[w]e do not look at the success of a trial theory or tactical decision, but whether counsel made an objectively reasonable choice in strategy from the alternatives available at the time." *United States v. Williams*, No. 200202264, 2005 CCA LEXIS 320, at *3, unpublished op. (N-M. Ct. Crim. App. 19 Oct 2005) (citing *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)).

The second *Strickland* prong requires a showing of prejudice resulting from counsel's deficient performance. *Strickland*, 466 U.S. at 687. Such prejudice must be "so serious as to deprive [the appellant] of a fair trial," producing "a trial whose result is unreliable." *Dewrell*, 55 M.J. at 133 (citation and internal quotation marks omitted). The appropriate test for this prejudice is "whether there is a reasonable probability that, but for counsel's error, there would have been a different result." *United States v. Quick*, 59 M.J. 383, 386-87 (C.A.A.F. 2004) (citation omitted).

The TDC addressed the appellant's allegations via our court-ordered affidavit. He explained that in addition to reviewing the evidence and repeatedly interviewing his client, he worked extensively with Dr. KM, a defense toxicology expert with whom the TDC had consulted and called to

---

[11] Brief on Behalf of Appellant dated 20 Apr 2015 at 16.

testify in multiple cases. Dr. KM extensively reviewed the case file, LCpl EH's medication history, and the results of her drug screening conducted shortly after the assault before concluding that LCpl EH was not on any narcotics that would facilitate her blacking out or passing out. Further, given the available evidence, Dr. KM was unable to estimate LCpl EH's blood alcohol content at the time of the assault. The TDC explained he originally intended to call Dr. KM to discuss the issues of blacking out versus passing out, but at the conclusion of the government's case, made the tactical decision to not call Dr. KM.[12] The TDC explained he did so because: 1) they did not believe the government had met its burden, 2) Dr. KM did not believe LCpl EH's prescription medications affected her memory, and the toxicology report similarly confirmed the absence of any recreational drugs that would make blacking out or passing out more likely, and 3) they did not want to expose Dr. KM to questions about "date-rape" drugs—questions which the trial counsel had previously asked Dr. KM in a pretrial interview. Had LCpl EH been given a date-rape drug, its presence would not appear on the toxicology report and it would have explained LCpl EH's memory issues and other behaviors. The TDC stated "the only chance of rebuttal of such testimony [about date rape drugs] would be in redirect examination and this might very well be deemed inculpatory by the factfinder."[13]

The TDC extensively cross-examined LCpl EH on her inability to remember events before, during, and after the assault. Then, during his summation, the TDC repeatedly attacked LCpl EH's lack of memory and argued her testimony was so unreliable as to not be believable.

We find, contrary to the appellant's assertions, that the TDC actively investigated the phenomenon of alcohol-induced blackouts, to include consultations with an expert with whom he had a close working relationship. Further, we find the appellant's tactical decision to not call his expert witness to discuss blackouts was an "objectively reasonable choice in strategy from the alternatives available at the time." *Williams*, at *3. The TDC was rightly concerned that cross-examination of his expert witness would reveal that prescription and recreational drugs did not contribute to LCpl EH's impairment, thereby increasing the likelihood that she was impaired by

---

[12] During his opening statement, the TDC told the military judge he intended to call an expert witness to discuss blackouts. The appellant now argues the TDC's subsequent decision to not call the expert supports the claim that the TDC was ineffective. Appellant's Brief at 16. We disagree. The appellant offers no evidence indicating that the military judge considered the TDC's change in case presentation in a manner prejudicial to the appellant.

[13] Appellee's Response to Court Order filed 29 Sep 2015, TDC Affidavit dated 28 Sep 2015 at 2.

alcohol consumed in the appellant's presence. Further, the tactical decision to not risk "opening the door" to evidence that LCpl EH may have ingested a date rape drug in the appellant's company was prudent and well within "the wide range of professionally competent assistance." *United States v. Smith*, 48 M.J. 136, 138 (C.A.A.F. 1998) (citation and internal quotation marks omitted).[14]

Assuming *arguendo* that the performance of the TDC was deficient, the appellant has not demonstrated prejudice. The military judge's special findings, supported by the record, indicate he was fully aware of LCpl EH's inability to remember key events related to the sexual assault. He certainly accepted the proposition that LCpl EH was blacked out but still mobile for much of the evening, noting that LCpl EH and the appellant left the nightclub and ended up in the appellant's "upstairs apartment which was accessed by stairs."[15] But Dr. KM could not testify to how much LCpl EH drank after she blacked out, could not estimate her blood alcohol content, and based on the toxicology report, could not attribute her lack of memory to anything other than alcohol. Even if the TDC had called his expert witness to testify, he would have been unable to challenge the reason for LCpl EH's memory loss or explain why she would fabricate her lack of memory. We are thus unable to conclude that "there is a reasonable probability . . . there would have been a different result." *Quick*, 59 M.J. at 386-87.

The appellant has failed to show that his TDC's performance was deficient or that he was in any way prejudiced by TDC's representation. We therefore find the appellant has not met his burden of demonstrating that his TDC was ineffective.[16]

---

[14] The appellant also argued his TDC was ineffective in failing to investigate whether LCpl EH's prescription hydrocodone could have contributed to her memory blackout, yet has not offered any evidence that LCpl EH was prescribed or taking hydrocodone on the night of the incident. At trial she testified that she was not on any medications that could affect her memory at the time. Record at 157. Additionally an exhibit attached to the Article 32, UCMJ, record reveals only that LCpl EH was prescribed hydrocodone on 5 Dec 2012, more than 10 days after the assault. Art. 32, UCMJ, Investigation Report dated 31 Mar 2014, Exhibit 7 at 3.

[15] AE XX at 3.

[16] The appellant did not rebut or otherwise challenge his TDC's affidavit. Brief on Behalf of the Appellant dated 10 May 2016. Accordingly, we find no requirement for additional fact-finding on this issue. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

### III. **CONCLUSION**

The findings and the sentence as approved by the convening authority are affirmed.

Senior Judge MARKS and Judge FULTON concur.

For the Court


R.H. TROIDL
Clerk of Court