*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and HACKEL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Jose TEJEDA**
Culinary Specialist First Class (E-6), U.S. Navy
*Appellant*

**No. 202100176**

Decided: 31 May 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Angela J. Tang

Sentence adjudged 24 February 2021 by a general court-martial convened at Naval District Washington, District of Columbia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 36 years and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Christopher B. Dempsey, JAGC, USN*

For Appellee:
*Lieutenant Megan E. Martino, JAGC, USN*

---

[1] Appellant was credited with having served 525 days of pretrial confinement.

Judge HACKEL delivered the opinion of the Court, in which Chief Judge MONAHAN and Senior Judge STEPHENS joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

HACKEL, Judge:

Appellant was convicted, pursuant to his pleas, of two specifications of sexual assault and one specification each of rape of a child and production of child pornography, in violation of Articles 120, 120b, and 134, Uniform Code of Military Justice [UCMJ].[2]

Appellant's sole assignment of error is that he received ineffective assistance of counsel when his trial defense counsel [TDC] failed to present evidence in mitigation of Appellant's allegedly harsh pretrial confinement conditions. We find no error and affirm.

## I. BACKGROUND

Appellant worked as a flag culinary specialist at an admiral's on-base quarters at the Washington Navy Yard. He occasionally brought his teenage daughter to work with him at the admiral's quarters. In June 2018, when his daughter was 15-years-old, he raped her while at the admiral's quarters, facilitated by giving her medicine that made her sleep. Appellant also sexually assaulted his daughter on at least nine other occasions from August 2018 to May 2019 while she was with him at work or at their home in Haymarket, Virginia. Using his phone, he made numerous video recordings of the sexual assaults.

After Appellant submitted an affidavit on appeal to this Court alleging his TDC took no action after he informed them of his allegedly "harsh" pretrial confinement conditions, we ordered responsive affidavits from TDC. Specifically, Appellant claimed that "[w]hile in pretrial confinement in civilian jail, [his] charges were posted online. As a result, [he] was physically abused by

_____

[2] 10 U.S.C. §§ 920, 920b, 934.

other prisoners who learned about [the charges]. This led to two fights where [he] had to defend [himself]."[3]

Appellant was placed into pretrial confinement in September 2019 at the Prince William County Detention Center, Manassas, Virginia, where he was held by the Commonwealth of Virginia on related civilian charges: aggravated sexual battery against a minor, forcible sodomy, and child pornography. Court-martial charges were preferred more than 11 months later in August 2020, encompassing Appellant's misconduct at the Washington Navy Yard and at his home in Virginia.

In early September 2020, two judge advocates, Lieutenant Commander (O--4) [LCDR] Lima and Lieutenant (O-3) [LT] Papa, were detailed to represent Appellant as his TDC.[4] Between their initial in-person meeting and the beginning of Appellant's trial, Appellant and his TDC met at the Washington Navy Yard 12 times in six months. In addition to these meetings, Appellant also had the ability to communicate with his TDC via video teleconference and telephone during this period.

In her sworn declaration to this Court, LCDR Lima stated she researched public records regarding Appellant as part of the case investigation. The only information she found pertaining to his civilian case was from a local media outlet reporting the initial allegations leading to his arrest in Prince William County. She further stated Appellant never told her that his civilian charges had been posted online. As such, LCDR Lima was not aware whether Appellant's civilian charges were ever posted online.

Prior to Appellant entering his guilty pleas, LCDR Lima was aware that he had an altercation with another prisoner while confined at the Prince William County Detention Center. She stated that Appellant did not say when the altercation took place, nor did he indicate whether the altercation was related to the charges pending against him. Separately, after the completion of his court-martial, Appellant told LCDR Lima that on his final day at the Prince William County Detention Facility, other inmates yelled at him and called him inappropriate names as he was being released. LCDR Lima noted that "[t]his was the first mention of anything specifically occurring at the confinement facility

---

[3] Appellant Motion to Attach, App'x A at 1.

[4] All names in this opinion, other than those of Appellant, the judges, and appellate counsel, are pseudonyms.

related to his charges."[5] For his part, in his sworn declaration to this Court, LT Papa asserted he never knew of the fights, claiming that Appellant never told him of any assaults, physical altercations, or fights with other inmates at any point prior, during, or after the court-martial.

Throughout their representation of Appellant, both TDC took note of Appellant's appearance, demeanor, and mentality. From their very first meeting with Appellant, and at every meeting thereafter, they spoke with him about his treatment and well-being while in confinement. Appellant typically expressed no concerns, indicating that he was being treated fine. During these meetings, Appellant appeared healthy, well-groomed, and confident in his mannerisms. Over the course of Appellant's pretrial preparation, both TDC also spoke with the defense team's forensic psychologist, the Virginia public defender representing Appellant on the civilian criminal charges, and the brig escorts, with whom Appellant spent at least 32 hours over the six-month period. They raised no concerns for Appellant's safety and reported no assaults or fights.

Appellant also claimed to have informed his TDC that he suffered from an infected tooth implant that went without treatment the entire time he was held at the Prince William County Detention Facility, and argued that his TDC were ineffective for failing to offer this as mitigation evidence at his sentencing hearing. Both TDC stated that the month before he pleaded guilty, Appellant informed them he was experiencing tooth pain. He said he had received some treatment at the Prince William County Detention Facility, but the issue was not resolved. Upon learning of this, TDC contacted Appellant's command about the issue. The command coordinated multiple medical and dental appointments for Appellant, though his dental issues were still unresolved when he pleaded guilty.

The military judge was never made aware of Appellant's alleged harsh pretrial confinement conditions. In the presentencing phase of Appellant's court-martial, neither TDC nor Appellant raised allegations of illegal pretrial punishment in violation of Article 13, UCMJ.[6] TDC presented no evidence to the military judge relating to Appellant having been physically abused by other prisoners because of the charges pending against him, nor of having an unresolved dental issue while in pretrial confinement.

---

[5] Appellee's Order Response, App'x A at 2.

[6] R. at 323.

## II. DISCUSSION

### A. Standard of Review and the Law

We review claims of ineffective assistance of counsel de novo.[7] To prevail on such a claim, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[8] The appellant bears the "burden of establishing the truth of factual matters relevant to the claim."[9] Only after an appellant has met his burden and has demonstrated both deficiency and prejudice can we find in the appellant's favor on an ineffective assistance of counsel claim.[10]

With a guilty plea, we look to see whether counsel's performance fell below a standard of objective reasonableness expected of all attorneys.[11] In considering a claim of ineffective assistance of counsel, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[12] This presumption must be rebutted by showing that a specific error, or errors, were "unreasonable under prevailing professional norms."[13]

When conducting an analysis of an ineffective assistance of counsel claim for a guilty plea, we focus on whether the ineffective performance affected the outcome of the plea process. "To satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[14] Furthermore, the prejudice inquiry "is modified to focus on whether the 'ineffective performance affected the outcome of the plea process.'"[15] In such cases, when there is an allegation that counsel was

---

[7] *United States v. Cooper*, 80 M.J. 664, 672 (N-M. Ct. Crim. App. 2020).

[8] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (other citation omitted).

[9] *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008).

[10] *Cooper*, 80 M.J. at 672.

[11] *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985)).

[12] *Strickland*, 466 U.S. at 689.

[13] *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987).

[14] *Bradley*, 71 M.J. at 16 (quoting *Hill v. Lockhart*, 474 U.S. at 59).

[15] *Id.*, 71 M.J. at 16 (quoting *Hill v. Lockhart*, 474 U.S. at 56–58).

ineffective in the sentencing phase of the court-martial, the court must consider "whether there is a reasonable probability that, but for counsel's error, there would have been a different result."[16]

**B. Analysis**

Appellant does not contend that he would have not pleaded guilty or insisted on going to trial. Appellant does not challenge the plea agreement, his pleas of guilt, or the findings of the military judge. Rather, he requests that this Court order a rehearing to reconsider the sentence. After careful consideration of the record, we have determined that the plea agreement is valid, that both Appellant and the convening authority have satisfied the material terms of the plea agreement, that Appellant's pleas are provident, and that the findings are correct in law and fact.

*1. Trial Defense Counsel's Performance Was Not Deficient*

Appellant provides insufficient context for his claims of ineffective assistance of counsel. He only states he "was physically abused by other prisoners who learned about [his charges]," and that he "told [his] trial defense counsel about these conditions prior to entering [his] pleas of guilty in military court."[17] Notably, Appellant does not indicate whether the alleged charges were from Virginia or the military, or whether the fights took place in the 11 months he spent in civilian jail prior to the military preferring charges, or in the five months after military charges were preferred. Similarly, he gives no indication of when or how he informed TDC of the fights, or of how much detail he gave them.

We are not convinced that Appellant has provided sufficient evidence for us to find TDC's performance fell below a standard of objective reasonableness expected of all attorneys.[18] Despite over five months of contact with Appellant, during which he had multiple opportunities to discuss the alleged fights with his attorneys in person, by video teleconference, and by telephone, Appellant never explained his claims or requested an investigation. Lieutenant Commander Lima saw no reason to pursue an investigation because, as she explained, "[she] did not consider this an Article 13, UCMJ matter, as it was not punishment or penalty imposed either by the government or the confinement

---

[16] *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (quoting *United States v. Quick*, 59 M.J. 383, 386–87 (C.A.A.F. 2004)).

[17] Appellant Motion to Attach, App'x A at 1–2.

[18] *See Strickland*, 466 US at 689.

facility."[19] Furthermore, with respect to not presenting evidence of the fights at trial, LCDR Lima addressed the issue directly: "I did not believe raising this isolated incident to be beneficial to our sentencing case, the general character we were attempting to convey to the military judge or to our attempts to reduce the punishment."[20] During her sentencing argument, LCDR Lima repeatedly emphasized the Defense's theme, stating, "At the core, he is still a good father and a good man,"[21] with "great rehabilitative potential."[22] "Strategic decisions to accept or forgo a potential benefit are not deficient when the decisions are objectively reasonable."[23] We find this strategic decision to be objectively reasonable, falling "within the wide range of reasonable professional assistance."[24]

The same reasoning applies to Appellant's dental issue. Appellant claims he informed TDC he had an infected tooth implant the entire time he was in pretrial confinement, but that it was not treated until after being transferred to the brig following his sentencing.[25] The record shows that Appellant informed TDC about the issue about one month prior to entering his guilty pleas, that TDC immediately took action to inform Appellant's command, and that the command acted reasonably to address the issue. As such, TDC had no reason to address the matter with the military judge—having alerted the command to Appellant's issue and having witnessed the command taking action to resolve Appellant's dental issue, TDC reasonably considered the matter inconsequential to the far more serious charges and punishment that Appellant was facing.

Finally, Appellant himself never signaled dissatisfaction with his counsel or his pretrial confinement conditions when presented those opportunities. Prior to the military judge accepting his pleas of guilty and the plea agreement, Appellant told the military judge five separate times that he was satisfied with the performance of his trial defense counsel.[26] When presented the opportunity at the beginning of the presentencing phase of the court-martial, Appellant did

---

[19] Appellee's Order Response, App'x A at 1.

[20] *Id.*

[21] R. at 753

[22] R. at 758.

[23] *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012).

[24] *Strickland*, 466 U.S. at 689.

[25] Appellant Mot. to Attach, App'x A at 1.

[26] App. Ex. XXVI at 1; R. at 279, 311, 315, and 317.

not raise any claims of illegal pretrial punishment.[27] Finally, Appellant raised no such concerns with the convening authority in his post-trial clemency request.

We find that Appellant has not met his burden of establishing the truth of factual matters relevant to his claim. As a result, we find that TDC's decisions were objectively reasonable and their performance was not deficient.[28]

*2. Appellant Suffered No Prejudice Due to Trial Defense Counsel's Failure to Present Evidence of "Harsh" Pretrial Confinement Conditions*

Even if TDC's performance was deficient, Appellant fails to demonstrate prejudice, for which he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[29] "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result."[30]

Appellant suggests that because the military judge sentenced Appellant near the "lower end" of the 35- to 45-year range in the plea agreement, she "tended to view the most severe confinement as not appropriate, . . . and thus, . . . likely would have been receptive to evidence that would have shown why slightly less confinement was appropriate."[31] We do not agree that these two concepts are connected, particularly in view of the record. Appellant ignores that the military judge conducted segmented sentencing for each of the four charges to which Appellant pleaded guilty. For the two specifications of sexual

---

[27] R. at 323.

[28] Appellant began pretrial confinement on 19 September 2019. He was indicted by a Virginia grand jury on 6 January 2020, and held by the Commonwealth of Virginia prior to the military preferring charges on 26 August 2020. At the conclusion of Appellant's trial on 24 February 2021, Trial Counsel signed the Confinement Order whereby Appellant would be confined beginning on that date as a result of his court-martial conviction. The record is unclear, however, about whether the military ever assumed custody of Appellant's pretrial confinement, or whether Virginia ever dismissed the indictments against Appellant. We need not determine these facts to reach our findings here. Similarly, we need not reach any conclusions regarding potential relief for Appellant should his alleged treatment have occurred while in civilian or military custody.

[29] *Strickland*, 466 U.S. at 694.

[30] *Bradley*, 71 M.J. at 16 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).

[31] Appellant's Br. at 8.

assault and the sole specification of production of child pornography, the military judge imposed the maximum allowable sentence of 30 years for each Charge—despite the plea agreement giving the military judge a sentencing range of 20–30 years for each offense.[32] It was only for Charge II (Rape of a Child) that the military judge awarded a sentence at the lower end of the range. This shows that the military judge actually *did* consider the most severe confinement to be appropriate for those three charges.

In the sentencing phase, prejudice may occur if "there is a reasonable probability that there would have been a different result if all available mitigating evidence had been exploited by the defense."[33] Appellant committed sexual assaults on his daughter over the course of multiple years, frequently making video recordings of the assaults. He pleaded guilty to raping his then-15-year-old daughter after giving her Advil PM to make her fall asleep before penetrating her sexually. If not for the plea agreement, Appellant would have faced a maximum punishment of confinement for life without the possibility of parole. With a sentencing range of 35–45 years of confinement, the military judge had a relatively broad range to consider. In extenuation and mitigation, TDC presented a robust case involving testimony of one expert and three witnesses, six exhibits, and an unsworn statement of the Accused, all tied to the Defense theme to show aspects of Appellant's character, including his difficult upbringing, his outstanding performance in the Navy, his dedicated work with his church, his remorse and contrition, and his rehabilitative potential. It is difficult to consider what additional weight, if any, the military judge would have given to evidence that Appellant was involved in two fights while in civilian jail—that occurred at some unknown point during a 17-month period—and a dental issue that was dealt with immediately once TDC alerted the command.

For these reasons, we find Appellant has not met his burden of demonstrating a "substantial likelihood" or "reasonable probability" of achieving a different result. Appellant cannot show he was prejudiced on these facts.

---

[32] R. at 770; App. Ex. XXVI at 11.

[33] *United States v. Scott*, 81 M.J. 79, 84–85 (C.A.A.F. 2020) (quoting *United States v. Akbar*, 74 M.J. 364, 438 (C.A.A.F. 2015)).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court